# IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES SLAMON, on behalf of himself and all others similarly situated,

                Plaintiff,

        *vs.*

CARRIZO (MARCELLUS) LLC; RELIANCE MARCELLUS II, LLC, AND RELIANCE HOLDINGS USA, INC.,

            Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 3:16-cv-02187-RDM

Judge Mariani

Electronically filed

# BRIEF IN SUPPORT OF MOTION
# TO DISMISS OF CARRIZO (MARCELLUS) LLC

## K&L GATES LLP
David R. Fine
david.fine@klgates.com
PA66742
Amy L. Groff
amy.groff@klgates.com
PA94007
Market Square Plaza
17 North Second St., 18th Fl.
Harrisburg, PA 17101
(717) 231-4500
*Counsel for Carrizo (Marcellus) LLC*

# <u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................ 1

II.   Factual and Procedural Background ............................................. 1

III.  Issues Presented ......................................................................... 4

IV.  Law and Discussion ..................................................................... 5

    A.   Contract claims based on royalty payments made more than four years before the complaint was filed are barred by the statute of limitations ................................................ 5

    B.   Breach-of-fiduciary-duty allegations based on conduct more than two years before the complaint was filed are barred by the statute of limitations ................................................ 6

    C.   The first cause of action fails to state a claim since the unambiguous terms of the lease permitted Carrizo to base royalty payments on the actual price it received from DTE .......... 6

        1.   The rules of statutory construction support Carrizo's interpretation ....................................................... 8

        2.   The rules of contract interpretation support Carrizo's interpretation ...................................................... 10

    D.   The second cause of action fails to state a claim since the facts alleged would not, if true, violate the lease's provision regarding deduction of post-production expenses ....................... 13

    E.   The third cause of action fails to state a claim since the implied duty of good faith and fair dealing cannot impose duties at odds with the express terms of the lease ...................... 15

    F.   The fourth cause of action fails to state a claim because the gist-of-the-action doctrine bars the breach-of-fiduciary-duty claim .................................................................................. 18

V.   Conclusion .................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001) ........................................................................ 19

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)................................................................................................ 1

*Elliot Coal Mining Company, Inc. v. Director, OWCP*, 17 F.3d 616 (3d Cir. 1994) ................................................................... 9

*Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013)...................................... 5

*Nat'l Surety Corp. v. Midland Bank*, 551 F.2d 21 (3d Cir. 1977)................................................................................................. 9

*Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78 (3d Cir. 2000) ........................................................................ 16

*Potts v. Chesapeake Exploration, L.L.C.*, 760 F.3d 470 (5th Cir. 2014)............................................................................................ 12

*Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002) .................................. 5

**State Cases**

*Chestnut Hill & Spring House Tpk. Rd. Co. v. Montgomery Cty.*, 76 A. 726 (Pa. 1910) ............................................................. 9, 10

*Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151 (Pa. Super. 1989) ....................................... 16

*In re Estate of Hall*, 535 A.2d 47 (Pa. 1987) ......................................... 16

*eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002) ................................................................................... 20

*Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385 (Pa. 1986) ................. 16

*Integrated Project Servs. v. HMS Interiors, Inc.*, 931 A.2d 724
(Pa. Super. 2007) ........................................................................... 6, 13

*Kilmer v. Elexco Land Services, Inc.*, 990 A.2d 1147 (Pa.
2010) ........................................................................................ 13, 14

*Laudig v. Laudig*, 624 A.2d 651 (Pa. Super. 1993) ................................ 11

*Melton v. Melton*, 831 A.2d 646 (Pa. Super. 2003) ................................ 11

*Sanzone v. Board of Police Comm'rs*, 592 A.2d 912 (Conn.
1991) ................................................................................................ 9

*Spigelmire v. North Braddock School District*, 43 A.2d 229
(Pa. 1945) ........................................................................................ 8

*Wyoming Valley West School District v. Northwest School
District*, 695 A.2d 949 (Pa. Cmwlth. 1997) ........................................ 10

**State Statutes**

42 Pa.C.S. § 5524(7) ................................................................................ 6

42 Pa. C.S. § 5525(a) ............................................................................... 5

**Other Authorities**

2A J. Sutherland, Statutory Construction § 47.33 ................................... 9

Corpus Juris Secundum, *Statutes,* § 443 ................................................ 9

Federal Rule of Civil Procedure 12(b)(6) ............................................ 1, 5

## I.    Introduction

Plaintiff James Slamon alleges that Defendant Carrizo (Marcellus) LLC ("Carrizo") and the other defendants paid him a lower natural-gas royalty than his lease required.

Mr. Slamon's claims are based on errors of law and of fact. This brief focuses on the former. There are a number of legal issues that can and should be resolved at this early stage to narrow the issues in the case as it moves forward.

## II.    Factual and Procedural Background

Because of the standard by which this Court will review Carrizo's motion under Rule 12(b)(6), Carrizo will assume (but does not concede) that the well-pleaded allegations of Mr. Slamon's complaint are true.

Mr. Slamon owns 203.72 acres of property in Susquehanna County, Pennsylvania.[1] On April 7, 2009, Mr. Slamon entered into an oil-and-gas lease with Carrizo.[2] Mr. Slamon has attached the lease and its addendum to his complaint, and so they are properly considered for purposes of this motion. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). As the lease notes, Carrizo paid Mr. Slamon an upfront bonus payment of $713,020 when he signed his lease. *See* Complaint at Exhibit "A." The lease calls for Carrizo to pay Mr. Slamon an 18-per-cent royalty on oil or gas produced from his

---

[1]    Complaint at ¶ 7.

[2]    *Id.*

property, and it describes different scenarios for determining on what valuation the royalty should be calculated. *See* Lease at §§ 4(b)(ii) and 4(f).

In 2010, Carrizo assigned a 60-per-cent interest in Mr. Slamon's lease to Defendant Reliance Marcellus II, LLC ("Reliance").[3] Mr. Slamon approved that assignment.[4]

Carrizo began producing gas from Mr. Slamon's property in late 2011 and made its first royalty payment to him in March 2012.[5] Once production began, Mr. Slamon received two periodic royalty checks— one each from Carrizo and Reliance.[6]

On October 3, 2016, Mr. Slamon filed a complaint in state court, which Carrizo removed to this Court on October 31, 2016.

Mr. Slamon makes a number of allegations about his royalty payments.

● First, that the payments from both Carrizo and Reliance are "consistently below both the NYMEX spot price for natural gas and the prices paid by other comparable gas producers in the same area."[7]

---

[3]     *Id.* at ¶ 9.  Reliance and its affiliate are both named as defendants and will be referred to collectively in this brief as "Reliance."

[4]     *Id.* at ¶ 18.

[5]     *Id.* at ¶ 21.

[6]     *Id.* at ¶ 22.

[7]     *Id.* at ¶ 23.

● Second, that Carrizo and Reliance base Mr. Slamon's royalty on different valuations of the gas produced from his property.[8]

● that the lease precludes the producer from deducting "post-production" expenses, but DTE Energy Trading, Inc. ("DTE"), the company to whom Carrizo and Reliance sell gas from Mr. Slamon's property, deducts from the price it pays Carrizo and Reliance a fee and certain expenses that Mr. Slamon describes as "post-production" expenses.[9] (Notably, Mr. Slamon does not allege that either Carrizo or Reliance deduct from Mr. Slamon's royalties any of their own post-production expenses.)

● Fourth, that Carrizo and Reliance are basing his royalty payments on an incorrect value for the gas produced from his property because they are misinterpreting two provisions of the lease, Sections 4(b)(ii) and 4(f).[10]

● Fifth, that Carrizo and Reliance have used an incorrect method of converting the price DTE pays to them (which is based on MMBtus) into the proper values for calculating Mr. Slamon's royalty (which is based on Mcfs).[11]

---

[8]    *Id.* at ¶ 24.

[9]    *Id.* at ¶ 30.

[10]    *Id.* at ¶¶ 31-32.

[11]    *Id.* at ¶ 41. An MMBtu is one million British thermal units while an Mcf is 1,000 cubic feet.

Mr. Slamon's complaint asserts five causes of action: (1) declaratory relief, (2) breach of contract, (3) breach of contract based on the implied duty of good faith and fair dealing, (4) breach of fiduciary duty and (5) accounting.

On December 5, 2016, Carrizo filed a motion to dismiss several of Mr. Slamon's claims, and this brief supports that motion.

### III.   Issues Presented

Whether the Court should dismiss Mr. Slamon's complaint to the extent that it

- seeks contract-based relief related to royalty payments made more than four years before he filed his complaint because such claims are barred by the statute of limitations;

- seeks fiduciary-duty-based relief related to royalty payments made more than two years before he filed his complaint because such claims are barred by the statute of limitations;

- alleges Carrizo has based his royalty payments on an incorrect valuation under Section 4 of the lease because, as a matter of law, the lease permits Carrizo to base his royalty payment on the price it receives from DTE;

- alleges Carrizo has breached the lease by paying a royalty from which post-production expenses have been deducted because, as a matter of law, the expenses about which Mr. Slamon complains are not post-production expenses;

- alleges Carrizo has breached an implied duty of good faith and fair dealing because the implied duty Mr. Slamon seeks to insert into the lease is at odds with the parties' express agreement; and

- alleges Carrizo has breached a fiduciary duty because, as a matter of law, the gist-of-the-action doctrine bars such a claim.

*[Suggested answer: Yes.]*

4

## IV.   Law and Discussion[12]

**A.   Contract claims based on royalty payments made more than four years before the complaint was filed are barred by the statute of limitations.**

A defendant may raise the statute of limitations in a motion to dismiss if the relevant facts appear on the face of the complaint. *See Robinson v. Johnson,* 313 F.3d 128, 134-35 (3d Cir. 2002). In Pennsylvania, the statute of limitations for breach of contract is four years. *See* 42 Pa. C.S. § 5525(a).

Mr. Slamon alleges breach of contract with respect to his monthly royalty payments for natural-gas production on his property from December 2011 to the present. *See* Complaint at ¶ 23. Mr. Slamon filed his complaint on October 3, 2016, and, so, he may not seek relief with respect to royalty payments made before October 3, 2012.

The Court should dismiss Mr. Slamon's contract claims to the extent that they seek a remedy for royalty payments made before October 3, 2012.

---

[12]   In resolving a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded, plausible factual allegations in the complaint, but should not accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (quotation omitted).

**B.** **Breach-of-fiduciary-duty allegations based on conduct more than two years before the complaint was filed are barred by the statute of limitations.**

Similarly, Mr. Slamon alleges that Carrizo breached a fiduciary duty to him. The statute of limitations in Pennsylvania for breach of fiduciary duty is two years. *See* 42 Pa.C.S. § 5524(7). Thus, to the extent Mr. Slamon's breach-of-fiduciary-duty claim survives Carrizo's demurrer, the claim should be limited to royalty payments made within the two years preceding the filing of the complaint.

**C.** **The first cause of action fails to state a claim since the unambiguous terms of the lease permitted Carrizo to base royalty payments on the actual price it received from DTE.**

Contract interpretation is a matter of law. *See Integrated Project Servs. v. HMS Interiors, Inc.,* 931 A.2d 724, 732 (Pa. Super. 2007).

Mr. Slamon asserts that the defendants improperly based his royalty payments on the price they received for natural gas from DTE rather than on the NYMEX spot price. *See* Complaint at ¶ 32.

Mr. Slamon's interpretation of his lease is wrong as a matter of law. The two relevant provisions, which are materially the same, are as follows:

> 4.   <u>ROYALTY PAYMENTS.</u>   Lessee covenants to pay Lessor, subject to Paragraph 4 below, the following consideration for the rights granted herein:
>
> ***
>
> (b)   <u>Production Royalty.</u>   Lessee shall pay Lessor the following royalty (the "<u>Royalty</u>"), free of all costs, whether pre-production or post-production, as follows:

6

\*\*\*

      (ii)    GAS: Lessee shall deliver to the credit of Lessor, free of all costs (whether pre-production or post-production), a monthly Royalty equal to eighteen percent (18%) of the greater of (i) the market value, measured at the point of take, of all gas and any constituents produced from the Leasehold or lands pooled or unitized therewith, or (ii) the gross amount of revenue paid to Lessee for all gas and any constituents produced from the Leasehold or lands pooled or unitized therewith, measured at the point of take; provided, however, that when gas production is sold in an arms-length sale transaction with an unaffiliated third party, the value of such gas production shall be the price paid to Lessee.

\*\*\*

      (f)  <u>Valuation.</u> The value of oil, gas, or other hydrocarbon production shall be determined on the basis of the greater of (i) the prevailing local market price at the time of sale or use, or, NYMEX spot price as published at the time of sale, whichever is greater, or (ii) the price paid to Lessee from the sale or use of the gas, including proceeds and any other thing of value received by Lessee; provided, however, that when gas production is sold in an arms-length transaction with an unaffiliated third party, the value of such gas production shall be the price paid to Lessee.

Slamon Lease at § 4. (A copy of the lease is attached to the complaint).

As the Court will see, read together, Sections 4(b)(ii) and 4(f) provide that the value of the natural gas for purposes of calculating Mr. Slamon's royalty will be based on the greater of (1) either the prevailing local market price or the NYMEX spot price, whichever of those two is greater or (2) the price paid to Carrizo for the sale or use of the gas. *However,* those provisions, which are part of the same sentence in each section, are followed by a semicolon and then the following: "provided, however, that when gas production is sold in an arms-length

transaction with an unaffiliated third party, the value of such gas production shall be the price paid to Lessee."

In his complaint, Mr. Slamon asserts that the language following the semicolon modifies only the immediately preceding clause and, so, notwithstanding the language following the semicolon, he is entitled to have his royalty calculated based on the NYMEX spot price (which he asserts was higher than the local market price). *See* Complaint at ¶ 32. Mr. Slamon is mistaken.

As a matter of law, the language following the semicolon modifies everything that precedes it in the sentence, not just the immediately preceding clause, and so Carrizo has a contractual right to base the royalty on the price it receives from DTE because DTE is an unaffiliated third party.

### 1.   The rules of statutory construction support Carrizo's interpretation.

Mr. Slamon invites the Court to apply rules of statutory construction to his lease. *See* Complaint at ¶ 32 n.2. Those rules, to the extent applicable, do not support Mr. Slamon's position.[13]

Mr. Slamon relies on the "last-antecedent" rule to assert that the language following the semicolon in Sections 4(b)(ii) and 4(f) only

---

[13]   While Carrizo does not concede that all rules of statutory construction may be applied to contract interpretation, there is precedent for applying some statutory-construction rules to contracts. *See, e.g., Spigelmire v. North Braddock School District,* 43 A.2d 229, 231 (Pa. 1945).

applies to the immediately preceding clause (*i.e.,* in Section 4(b)(ii), the clause that reads "(ii) the gross amount of revenue paid to Lessee for all gas and any constituents produced from the Leasehold …" and, in Section 4(f), the clause that reads "(ii) the price paid to Lessee from the sale or use of the gas …"). But Mr. Slamon ignores the punctuation in each provision.

In statutory construction, when there is a list followed by a proviso and the proviso is preceded by a comma or a semicolon, the proviso is intended to apply to all of the items in the list—not just the item immediately preceding the semicolon. *See Elliot Coal Mining Company, Inc. v. Director, OWCP,* 17 F.3d 616, 630 (3d Cir. 1994) ("Conversely, the presence of a comma before the last clause in the statute suggests that the limiting clause applies to the entire series."); *Nat'l Surety Corp. v. Midland Bank,* 551 F.2d 21, 34 (3d Cir. 1977) (same); 2A J. Sutherland, Statutory Construction § 47.33); Corpus Juris Secundum, *Statutes,* § 443 (same).

Courts have applied this rule as well when the proviso is set off by a semicolon rather than a comma. *See, e.g., Sanzone v. Board of Police Comm'rs,* 592 A.2d 912, 919 (Conn. 1991) (applying proviso following a semicolon to all items in the preceding list and citing Sutherland).

In his complaint, Mr. Slamon cites *Chestnut Hill & Spring House Tpk. Rd. Co. v. Montgomery Cty.,* 76 A. 726 (Pa. 1910), for the proposition that the rules of grammar "require, as a general thing, a

limiting clause or phrase, following several expressions to which it might be applicable, to be restrained to the last antecedent." *Id.* at 727. That paraphrasing of the last-antecedent rule is of no help in this case because the provision under consideration in that case was not set off from the preceding list by either a comma or a semicolon.

Thus, under applicable rules of construction, the language following the semicolons in Sections 4(b)(ii) and 4(f) of the lease applies to all of the antecedents such that, if Carrizo sells its gas production "in an arms-length transaction with an unaffiliated third party, the value of the gas production shall be the price paid to [Carrizo]," and the market price and NYMEX spot price are irrelevant.

### 2. *The rules of contract interpretation support Carrizo's interpretation.*

Common rules of contract interpretation similarly support Carrizo's interpretation.

Consider first two fundamental principles of Pennsylvania contract law—"(1) that no provision of a contract should be treated as surplusage or as redundant if any reasonable meaning consistent with other parts of the agreement can be given to it" and "(2) that the court must determine the intent of the parties and give effect to all provisions of the contract." *Wyoming Valley West School District v. Northwest School District,* 695 A.2d 949, 953 (Pa. Cmwlth. 1997).

In construing a contract, a court must look to the language of the contract to determine the parties' intentions. *See Melton v. Melton,* 831 A.2d 646, 653-54 (Pa. Super. 2003). In doing so,

> the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*Laudig v. Laudig,* 624 A.2d 651, 653 (Pa. Super. 1993).

Mr. Slamon's assertion—that the language following the semicolons in Sections 4(b)(ii) and 4(f) only applies to the immediately preceding clauses—would create a redundancy and render the language following the semicolon in each section meaningless. In each subsection, the language *immediately preceding* the semicolon calls for the value of the oil or gas to be the price or revenue actually paid to Carrizo.[14] In each subsection, the language *following* the semicolon indicates that, when the oil or gas is sold in an arms-length transaction to an unaffiliated third party, the value of the oil or gas would be "the price paid to" Carrizo. If Mr. Slamon's interpretation were correct, the language following the semicolon in each subsection would be

---

[14] Specifically, immediately preceding the semicolon, Section 4(b)(ii), reads "(ii) the gross amount of revenue paid to Lessee for all for all gas and any constituents produced from the Leasehold … ." Immediately preceding the semicolon, Section 4(f) reads "(ii) the price paid to Lessee from the sale or use of the gas … ."

11

redundant of the language preceding the semicolon and render one or the other superfluous.

Why would the parties add a proviso that simply restates in different words the only clause it modifies?

The answer is that the parties did no such thing.

Some industry context is helpful. In some situations in which leases call for royalties to be based on the price received by the production company, landowners have alleged that the production company has sold the oil or gas to a company affiliated with the production company and has done so at inappropriately low prices in order to minimize royalty payments. *See, e.g., Potts v. Chesapeake Exploration, L.L.C.,* 760 F.3d 470 (5th Cir. 2014). The language of Mr. Slamon's lease avoids even the possibility of that. Mr. Slamon's royalty is to be based on the price Carrizo actually receives for the oil or gas *so long as* that sale is part of an arms-length transaction with an unaffiliated third party—in other words, so long as the sale is not to an affiliated company. If the sale is not to such an unaffiliated third party, Mr. Slamon is allowed the higher of the actual sale price or the market value. *See, e.g.,* Lease § 4(b)(ii). That interpretation comports with the rules of contract interpretation in that it gives effect to all of the provisions of Sections 4(b)(ii) and 4(f) in a way that reflects a rational purpose.

A court may interpret a contract as a matter of law. *See Integrated Project Servs.,* 931 A.2d at 732. The Court should interpret Mr. Slamon's lease as a matter of law and hold that Sections 4(b)(ii) and 4(f) of the lease permit the lessee, when it is calculating the lessor's royalty, to base the royalty on the price the lessee received from an unaffiliated third party in an arms-length transaction.

Because the complaint does not allege that DTE was in any way affiliated with Carrizo or that the sales by Carrizo to DTE were other than arms-length, the Court should dismiss Mr. Slamon's claims to the extent they allege that Mr. Slamon's lease payments should have been based on anything other than the price DTE paid Carrizo for natural gas.

**D.    The second cause of action fails to state a claim since the facts alleged would not, if true, violate the lease's provision regarding deduction of post-production expenses.**

Mr. Slamon also asserts that Carrizo has violated the provision in his lease that requires that his royalty to be free of post-production costs. *See* Complaint at ¶ 40.

In *Kilmer v. Elexco Land Services, Inc.,* 990 A.2d 1147 (Pa. 2010), the Pennsylvania Supreme Court explained that, in the oil-and-gas industry, post-production expenses are "the costs of getting the product from the wellhead to the point of sale …" *Id.* at 1157. The wellhead is the point at which the oil or natural gas leaves the ground.

13

Mr. Slamon makes no allegation that Carrizo deducts from his royalty any of Carrizo's expenses "getting the product from the wellhead to the point of sale" to DTE—in other words, Mr. Slamon does not allege that Carrizo deducts from his royalty payments any post-production costs as the Pennsylvania Supreme Court defined that phrase in *Kilmer* (and as the oil-and-gas industry has long understood that phrase).

Mr. Slamon's claim is different. He alleges that Carrizo sells the gas to DTE and that DTE then sells the gas to third parties. *See* Complaint at ¶ 37. He alleges that DTE, in calculating the price it will pay to Carrizo, begins with the price it receives from that third party and deducts a fee and certain of its own expenses for things like dehydrating, compressing and transporting the gas. *Id.* at ¶¶ 37-40. Mr. Slamon alleges that, because DTE arrives at the price it will pay Carrizo after making those deductions and because Carrizo bases Mr. Slamon's royalty on the price it receives from DTE, Carrizo has somehow violated the requirement that his royalty be free of post-production costs. He is mistaken.

In *Kilmer,* the Supreme Court incorporated into Pennsylvania law the widespread definition of "post-production" expenses. They are incurred between the wellhead and the point of sale. *See* 990 A.2d 1157. DTE's expenses, which are necessarily incurred only after Carrizo has sold the oil or gas to DTE, cannot then by definition be "post-production" expenses.

14

The Court should dismiss Mr. Slamon's claims to the extent they assert that Carrizo violated the provision in his lease about post-production expenses.

**E.  The third cause of action fails to state a claim since the implied duty of good faith and fair dealing cannot impose duties at odds with the express terms of the lease.**

Mr. Slamon alleges that the defendants breached the lease by breaching the implied duty of good faith and fair dealing.

Specifically, Mr. Slamon asserts that the defendants have exclusive control over the production and sales processes related to his property and that of other class members; that the defendants have exclusive control over production, sales and pricing information; and that the defendants select when to gather and produce gas, when, where and to whom to sell gas and at what price. *See* Complaint at ¶ 81. Mr. Slamon then alleges that the defendants breached the duty of good faith and fair dealing "by accepting sale prices under the DTE Agreement that are well below both the NYMEX spot price for natural gas and the local market price for natural gas as reflected by the prices received by other natural gas producers, including, for example, Cabot." Complaint at ¶ 83.

In Pennsylvania, where there is an implied covenant of good faith and fair dealing, it is to be used to interpret existing, express obligations in the contract but may not be used to "rewrite" the

15

agreement. *See In re Estate of Hall,* 535 A.2d 47, 56 n.7 (Pa. 1987).[15] Importantly, the application of such an implied covenant is limited because "[t]he law will not imply a different contract than that which the parties have expressly adopted. To imply covenants on matters specifically addressed in the contract itself would violate this doctrine." *Hutchison v. Sunbeam Coal Corp.,* 519 A.2d 385, 388 (Pa. 1986) (citations omitted); *Northview Motors, Inc. v. Chrysler Motors Corp.,* 227 F.3d 78, 91 (3d Cir. 2000) ("[T]hat duty is not divorced from the specific clauses and cannot be used to override an express contractual term.").

Mr. Slamon's invocation of the duty of good faith and fair dealing runs counter to these legal rules. Essentially he argues that Carrizo and Reliance had an implied duty to sell gas from his property at the local market price or the NYMEX spot price. But the parties to the lease dealt expressly with that issue, and their agreement refutes Mr. Slamon's suggestion of a contrary implied duty.

As discussed earlier in this brief, Sections 4(b)(ii) and (f) set out the requirements for assessing the value of the gas on which Mr. Slamon's royalty would be calculated. Carrizo will not repeat here the

---

[15]    Carrizo refers to situations "where there is an implied covenant of good faith and fair dealing" because Pennsylvania law is to some degree unsettled, and some courts hold that only *certain* contracts give rise to such an implied covenant. *See, e.g., Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co.,* 560 A.2d 151, 153 (Pa. Super. 1989). Carrizo assumes for the sake of argument, but does not concede, that such an implied covenant applies to the Slamon lease.

discussion it offered regarding those sections other than to emphasize that those provisions set out the parties' agreement regarding when Carrizo must value the gas at market price, NYMEX spot price or actual price received.

In his third cause of action, Mr. Slamon asserts that, when the value of gas is based on the price Carrizo actually receives (*i.e.,* when the proviso language governs), Carrizo has an implied duty to ensure that the price it actually receives—and, therefore, the price on which it bases Mr. Slamon's royalty—is at least the local market price or the NYMEX spot price. But implying such a duty would be counter to the express terms of the lease. In Section 4, the parties agreed on when Carrizo would have to base Mr. Slamon's royalty on the local market price, the NYMEX spot price or the actual price paid by an unaffiliated third-party in an arms-length transaction. Thus, the lease expressly sets out four valuation scenarios:

1.    When Carrizo sells the gas to an unaffiliated third party in an arms-length transaction, the gas is valued at the actual price Carrizo receives.

2.    When Carrizo sells the gas in a transaction other than an arms-length sale to an unaffiliated third party *and* the "prevailing local market price" is higher than the NYMEX spot price and the actual price Carrizo receives, the gas is valued at the "prevailing local market price."

3.    When Carrizo sells the gas in a transaction other than an arms-length sale to an unaffiliated third party *and* the

NYMEX spot price is higher than the "prevailing local market price" and the actual price Carrizo receives, the gas is valued at the NYMEX spot price.

4.      When Carrizo sells the gas in a transaction other than an arms-length sale to an unaffiliated third party *and* the actual price Carrizo receives is higher than the "prevailing local market price" and the NYMEX spot price, the gas is valued at the actual price Carrizo receives.

The parties to the lease expressly agreed when Mr. Slamon's royalty would be based on either the prevailing local market price or the NYMEX spot price (*see* scenarios 2 and 3 above). On the other hand, the parties did not expressly say that, if Carrizo sells gas from Mr. Slamon's property in an arms-length transaction with an unaffiliated third party, Carrizo would be obligated to ensure that the price it received was equivalent to the prevailing local market price or the NYMEX spot price. To now read into the lease an implied duty for Carrizo to do so would be to add to the lease a term regarding a subject on which the parties expressly set out the terms by which they agreed to be bound.

The Court should dismiss Mr. Slamon's claims to the extent they rely on the implied duty of good faith and fair dealing.

## F.      The fourth cause of action fails to state a claim because the gist-of-the-action doctrine bars the breach-of-fiduciary-duty claim.

Mr. Slamon asserts a claim for breach of fiduciary duty based on allegations that the defendants have, in his words, "exclusive control over the production and sale process related to natural gas produced on

land owned by Plaintiff and the Class . . ." *See* Complaint at ¶ 86. All of Mr. Slamon's assertions in support of his breach-of-fiduciary-duty claim describe actions taken by Carrizo pursuant to its rights and duties under its lease with Mr. Slamon. *See, e.g.,* Complaint at ¶¶ 86 (discussing production and sale of gas, both of which are principal subjects of the lease), 87 (discussing sale of gas, which is a principal subject of the lease), 88 (discussing gathering, production and sale of gas, all of which are principal subjects of the lease) and 89-90 (discussing sale of gas, which is a principal subject of the lease).[16]

Pennsylvania courts apply the gist-of-the-action doctrine to bar tort claims that arise from duties imposed by contract. *See Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 103 (3d Cir. 2001). The distinction is in the source of the duty alleged: if the duty arises from a contract between the parties rather than some broader, societal obligation, the claim should be asserted in contract and the gist-of-the-action doctrine bars a tort claim. *Id.* at 103-04. A breach-of-fiduciary-duty claim is barred by the gist-of-the-action

---

[16]     The following provisions of the lease set out the parties' rights and duties with respect to gas production: Sections 1, 2, 3, 4, and 7. Section 4 of the lease sets out the parties rights and duties with respect to sale of gas from the leasehold. The complaint refers to the defendants selecting when to "gather and produce gas …" Complaint at ¶ 88. Although the term "gather" has a different meaning in the industry, it appears that Mr. Slamon is using it as essentially a synonym for "production," which is the process by which gas is brought to the surface.

doctrine if the fiduciary duty alleged is grounded in contractual obligations. *See eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 19 (Pa. Super. 2002).

In this case, all of Mr. Slamon's allegations in support of his breach-of-fiduciary-duty claim relate to how Carrizo has carried out actions arising solely from the parties' lease. Put another way, the duties on which Mr. Slamon bases his breach-of-fiduciary-duty claim are all duties arising from the lease agreement rather than from some broader societal obligation.

The Court should dismiss the claim for breach-of-fiduciary-duty.

## V.   Conclusion

Therefore, Carrizo respectfully requests that the Court grant its motion to dismiss and

    1.    dismiss Mr. Slamon's contract claim

        a.    to the extent it seeks relief related to royalty payments made more than four years before the date on which he filed his complaint, October 3, 2016;

        b.    to the extent it asserts that Carrizo was not entitled under Sections 4(b)(ii) and 4(f) to base his royalty on the actual price Carrizo received from DTE;

        c.    to the extent it asserts that Carrizo has breached the provisions in the lease regarding post-production expenses;

    2.    dismiss the claim based on a breach of the implied duty of good faith and fair dealing (the third cause of action); and

    3.    dismiss the claim based on a breach of fiduciary duty (the fourth cause of action).


        Respectfully submitted,

        **K&L GATES LLP**

        <u>s/ David R. Fine</u>
        David R. Fine
        david.fine@klgates.com
        PA66742
        Amy L. Groff
        amy.groff@klgates.com
        PA94007
        Market Square Plaza
        17 North Second St., 18th Fl.
        Harrisburg, PA 17101
        (717) 231-4500
        *Counsel for Carrizo (Marcellus) LLC*

November 29, 2016

## **CERTIFICATE REGARDING WORD COUNT**

I certify that this brief includes 4,951 words as calculated using the word-counting feature of Microsoft Word.


s/ David R. Fine

## CERTIFICATE OF SERVICE

I certify that, on November 29, 2016, I filed the attached document with the Court's ECF system such that the following will receive service automatically:

Peter H. LeVan, Esq.
LeVAN LAW GROUP LLC
One Logan Sq. 27th Fl.
Philadelphia, PA  19103
*Counsel for Plaintiff*

Shanon J. Carson, Esq.
Glen L. Abramson, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust St.
Philadelphia, PA 19103
*Counsel for Plaintiff*

Gerard M. Karam, Esq.
MAZZONI KARAM PETORAK & VALVANO
Suite 201, Bank Towers
321 Spruce St.
Scranton, PA 18503
*Counsel for Plaintiff*

Justin H. Werner, Esq.
REED SMITH LLP
225 Fifth Avenue
Pittsburgh PA 15222
*Counsel for Reliance Entities*


s/ David R. Fine