THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
JUL 2 7 2018
PER _____
DEPUTY CLERK

JAMES SLAMON,

    Plaintiff,

v.

CARRIZO (MARCELLUS) LLC, et al.,

    Defendants.

3:16-CV-2187
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

This matter is a putative class action concerning royalty payments made on oil and gas leases. Presently before the Court is Plaintiff's Motion for Expedited Emergency Relief Pursuant to Fed. R. Civ. P. 23(d) to correct communications sent by Defendants BKV Operating LLC and BKV Chelsea LLC (collectively "BKV") to putative class members. Plaintiff, James Slamon, claims that he and others similarly situated were paid royalties on their oil and gas leases that were improperly calculated by Original Defendants, Reliance Marcellus II, LLC, Reliance Holdings USA, Inc., (collectively "Reliance"), and Carrizo (Marcellus) LLC ("Carrizo"). Doc. 1. The Court granted in part and denied in part the Original Defendants' motion to dismiss the Plaintiff's complaint on September 5, 2017. Doc. 30. Plaintiff has also sought but has not been granted thus far class certification for similarly situated lessors of these Defendants.

After the lawsuit was filed, BKV purchased a number of leases at issue in this case from Defendants Carrizo and Reliance. On June 14, 2018, Plaintiff filed the Motion for Emergency Relief after learning that BKV has contacted putative class members to renegotiate material terms in the leases at issue and to settle potential claims for damages. Doc. 43. Four days later, Plaintiff filed an Amended Complaint adding BKV as Defendants to the suit. Doc. 47. On June 27, 2018, this Court held an evidentiary hearing regarding Plaintiff's Motion, after which BKV and Plaintiff filed respective briefs. Docs. 56, 59. The Motion is now ripe for adjudication.

## II. FACTUAL ALLEGATIONS

On June 7 and June 8, 2018, BKV sent a package of materials—including a cover letter, an Amendment and Ratification of Oil and Gas Lease, and a Full and Final Release (the "Materials") to 317 putative class members in this action, including Plaintiff James Slamon, seeking to renegotiate the valuation term in the leases and to release all potential claims against BKV in exchange for a "signing bonus." June 27, 2018 Hearing Stipulations (the "Stipulations"), ¶¶ 1, 3, 4. *See also* June 27, 2018 Hearing Exhibits 1 and 2 (BKV Materials sent to Plaintiff Slamon and putative class member Robert Coughlin). Other than the addressee's contact information and signing bonus figures, the materials are substantively identical. Stipulations ¶ 5. Under the terms of the materials, BKV's offer would expire on July 1, 2018. *Id.* ¶ 8. If the lessor executes the materials, BKV would have

up to 60 days to send the signing bonus. *Id.* ¶ 9. The sums of the signing bonuses vary, but in most instances they are in the tens or hundreds of thousands of dollars. *Id.* ¶ 10.

Under the lessors' original lease terms, the valuation of their oil and gas production will be determined by the "greater of" the prevailing market price or the price paid to the Lessee from the sale or use of the gas. Paragraph 4(f) of the leases, which provides valuation term in full, reads:

> (f) <u>Valuation</u>. The value of oil, gas, or other hydrocarbon production shall be determined on the basis of *the greater of (i) the prevailing local market price at the time of sale or use, or, NYMEX spot price as published at the time of sale, whichever is greater, or (ii)* the price paid to Lessee from the sale or use of the gas, including proceeds and any other thing of value received by Lessee; provided, however, that when gas production is sold in an arms-length sale transaction with an unaffiliated third party, the value of such gas production shall be the price paid to Lessee.

Doc. 1 at 35. Under the terms of BKV's Materials, the italicized portion above would be removed, such that the lessee would only receive payment as determined by the "price paid to Lessee from the sale or use of the gas..." Stipulations ¶ 11. In addition to amending the valuation term, BKV's Materials, if executed, would also discharge potential claims against not only BKV, but also Carrizo and Reliance. *Id.* ¶ 13. However, BKV's materials did not mention the existence of this action. Hearing Exs. 1 and 2.

At the time these materials were sent, BKV was not a party to this action, but was the direct successor-in-interest to Defendants Carrizo and Reliance for the leases at issue in this case. *Id.* ¶ 6. After learning of these communications, Plaintiff filed the instant motion and filed an Amended Complaint to add BKV as Defendants. Doc. 47. Plaintiff

3

claims that the Materials sent to putative class members "misleadingly solicit a change to future rights under the Class Leases and a full release of the claims at issue in this class action, all without disclosing the existence of this class action, describing the Class Members' rights under the class action, or explaining Class Counsel's role in representing the interests of Class Members." Doc. 43 at 2.

Plaintiff's motion seeks an order requiring BKV "(1) to identify all Class Members to whom the misleading communication was sent and provide Class Counsel with copies of all such communications; (2) authorizing Class Counsel to prepare and send a responsive communication to all Class Members, informing them of this class action, describing the nature of the legal claims Class Counsel is asserting on their behalves, and explaining the legal effect of executing any of the BKV documents; (3) declaring all contract amendments, releases or other legal documents executed by any putative Class Member in response to the misleading BKV communication to be deemed void and legally unenforceable; and (4) enjoining BKV from sending any misleading or materially incomplete communication to Class Members in the future." Doc. 43 at 2-3.

Upon receipt of Plaintiff's motion, the Court held an evidentiary hearing to develop the factual record on June 27, 2018. As of the evidentiary hearing, 16 lessors have executed and returned the Materials to BKV. *Id.* ¶ 7. While Plaintiff's Motion for Emergency Relief is pending, BKV has agreed to not send any signing bonuses for the executed Materials. *Id.* ¶ 14. At the conclusion of the hearing, the Court ordered the parties to file

4

additional briefing and encouraged counsel to agree upon the text of a potential curative notice to be sent to those who received BKV's original Materials. Accordingly, in addition to filing their respective briefs, the parties also filed a letter on July 10, 2018 informing the Court that counsel have "agreed upon the text of a proposed curative to class members, without reference to which party may send the proposed notice." Doc. 58 at 1. The proposed curative notice includes three pages of text, including a description of the pending class action, contact information for Plaintiff's counsel, and an assurance that those who have already executed the Materials may have an opportunity to "reconsider" their decision, and that they would not be "bound by that prior decision of the signed Materials unless and until [they] re-sign and return the Materials again after [their] receipt of this letter." Doc. 58-1 at 1.

### III. ANALYSIS

Federal Rule of Civil Procedure 23(d) grants broad authority to a court overseeing a class action to issue orders to "determine the course of proceedings" or "impose conditions on the representative parties." Fed. R. Civ. P. 23(d). Because class actions "present opportunities for abuse as well as problems for courts and counsel in the management of cases...a district court has both the duty and the broad authority" to supervise communication between the parties and potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 2200, 68 L. Ed. 2d 693 (1981). "[A]n order limiting communications between parties and potential class members should be based on a clear

record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. "Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23." *Id.* at 101-02. "In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.

"The court's duty to supervise communications with potential class members exists even before a class is certified." *Cheverez v. Plains all Am. Pipeline, LP*, 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016) (citing *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on Apr. 20, 2010*, 2011 WL 323866, at *2. (E.D. La. Feb. 2, 2011)). Generally, parties are not prohibited from communicating with putative class members. *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 213 (2d Cir. 1987) ("[A]t least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class."); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003) ("A defendant...has the right to communicate settlement offers directly to putative class member[s].") (quoting *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 548 (S.D. Iowa 2000)); *In re Southeastern Milk Antitrust Litig.*, 2009 WL 3747130, at *3 (E.D. Tenn. Nov. 3, 2009) ("Against this general backdrop, it is clear

then that the defendants may discuss settlement offers with putative class members prior to class certification, as a general rule.").

However, "[m]isleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) (citing *Gulf Oil*, 452 U.S. at 101 n. 12). *See also Cox Nuclear*, 214 F.R.D. at 698 ("Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel."). "A court may take action to cure the miscommunication and to prevent similar problems in the future where potential class members have received inaccurate, confusing or misleading communications." *Cheverez*, 2016 WL 861107, at *2 (internal quotation marks omitted). "That same policy concern applies where a party misleads class members by *omitting* critical information from its communications." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (emphasis added). Finally, "Rule 23(d) does not...require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against 'the *likelihood* of serious abuses.'" *In re School Asbestos Litig.*, 842 F.2d at 683 (quoting *Gulf Oil*, 452 U.S. at 104) (emphasis in original).

Since Plaintiff filed his Motion for Emergency Relief, BKV has since offered to send a curative notice to class members. See Stipulations ¶ 15; Doc. 58. As a result of the parties' agreement as to the text of a potential curative notice, the parties' potential disputes over the four requests for relief in Plaintiff's motion are significantly narrowed. The Court will address each form of requested relief in turn.

First, Plaintiff asked for an order requiring BKV "identify all class members to whom the misleading communication was sent and provide Class Counsel with copies of all such communications." Doc. 43 at 2-3. BKV's counsel represented at the June 27, 2018 Hearing that while they need to confirm with their client, they do not believe providing Plaintiff counsel the identification of the communications' recipients and copies of such communications would be an issue.[1]

Second, Plaintiff asks for an order "authorizing Class Counsel to prepare and send a responsive communication to all Class Members, informing them of this class action, describing the nature of the legal claims Class Counsel is asserting on their behalves, and explaining the legal effect of executing any of the BKV documents." Doc. 43 at 3. The Court agrees that BKV's Materials to putative class members contained a material omission – it asked putative class members to release potential claims against Defendants without disclosing the existence of the pending class action, let alone a description of Plaintiff's

---

[1] Should BKV counsel's good faith representation during the evidentiary hearing prove to be mistaken, parties shall notify the Court of any dispute related to the provision of such information to Plaintiff's counsel by filing a brief letter with the Court.

claims. Hearing Exs. 1 and 2. Such an omission is patently misleading—it may induce putative class members into releasing claims without knowledge of the possibility of recovery through the current litigation; it also does not afford putative class members a meaningful chance to evaluate the claims and their likelihood of success with counsel. *See Cheverez*, 2016 WL 861107, at *4 ("Although the Second Release notifies victims that a consolidated class action exists, it does not provide additional information, such as an explanation of the Plaintiffs' claims or the contact information for Plaintiffs' counsel. Courts routinely hold that releases are misleading where they do not permit a putative class member to fully evaluate his likelihood of recovering through the class action.") (collecting cases); *Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. 2014) ("[T]he Employee Letter and the opt-out declaration provided by Defendants are flawed and a curative notice is in order…The Employee Letter omits key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint."); *Griffin v. Aldi, Inc.*, 2017 WL 1957021, at *5 (N.D.N.Y. May 11, 2017) ("The Court therefore disagrees with Aldi's contention that it was not improperly misleading for it to issue separation agreements to departing store managers precertification without even mentioning this lawsuit.").

To the extent that BKV's original materials contained a material omission, the parties' agreed-upon text sufficiently cures the omission. Doc. 58. The proposed curative notice contains three pages of single-spaced text explaining the class action claims, BKV's subsequent acquisition of leases from Defendants Carrizo and Reliance, and the legal effect

9

of executing BKV's settlement offer. See Doc. 58-1 at 3 ("By signing the Materials, you will be entitled to receive a sum certain within 60 days, but will be precluded from joining the Class and potentially will be giving up valuable claims."). Additionally, the proposed notice encourages the recipient to "seek the advice of counsel before deciding whether to accept BKV's offer." Id. The Court finds that the text sufficiently cures the misleading nature of BKV's original Materials by informing putative class members of the claims of the pending class action as well as the legal effect of BKV's settlement offer.

However, the Court does not agree with Plaintiff that the curative notice should be sent by Plaintiff counsel. As stated above, Defendants are generally entitled to communicate settlement offers with putative class members. See, e.g., Christensen, 815 F.2d at 213 ("[A]t least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class."); Cox Nuclear, 214 F.R.D. at 699 (S.D. Ala. 2003) ("A defendant...has the right to communicate settlement offers directly to putative class member[s]."). To the extent such settlement offers are misleading, the court may order a curative notice to be sent. The objective of a *curative* communication is to rectify any confusion, misrepresentation, or material omission that arose from the original communication. Such an objective is best accomplished by having the party that sent the original communication correct what it had previously stated, which the proposed curative text does precisely. Furthermore, to allow another party to send the curative notice would likely cause *more* confusion among recipients, who may not draw a ready connection

10

between BKV's original materials and the corrective communication. Accordingly, the proposed agreed-upon text of the curative notice shall be sent by BKV to all recipients of the original BKV Materials. *See, e.g., Riley v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 4249849, at *3 (W.D.N.C. July 13, 2015) (finding that a curative notice is warranted and stating that the court "will instruct *Defendants* to distribute curative notice as described above") (emphasis added); *Cheverez*, 2016 WL 861107, at *7 (ordering Defendants provide curative notice to claimants who signed a release of claims against Defendants).

Third, Plaintiff asks the Court declare "all contract amendments, releases or other legal documents executed by any putative Class Member in response to the misleading BKV communication to be deemed void and legally unenforceable." Doc. 43 at 3. This request is rendered moot by the fact that BKV has agreed to rescind all agreements executed by putative class members thus far, and to grant each such individual the opportunity to make a new election to accept the settlement offer. *See* Doc. 58-1 at 1 ("If you have already signed the BKV Materials and returned them to BKV, you will have an opportunity to reconsider your decision. **You are not bound by that prior decision or the signed Materials unless and until you re-sign and return the Materials again after your receipt of this letter.**") (emphasis in original). *See also* Doc. 56 at 23 n. 5 (BKV's brief in opposition to Plaintiff's Motion averring that Plaintiff's request for invalidation of executed releases is "unnecessary because BKV has agreed, in connection with its proposed curative communication, to allow any putative class member who signed the

Materials to reconsider and will require such putative class members to re-submit new signed Materials with a new deadline after they have received the curative communication").

The proposed curative notice extends the recipients' deadline for responding to BKV's settlement offer and amendment of lease terms to August 15, 2018. Doc. 58-1 at 3. Because the parties have engaged in additional briefing for the instant motion subsequent to the June 27, 2018 evidentiary hearing, the Court will modify the parties' proposed deadline extension for acceptance of BKV's settlement offer to August 31, 2018. All other aspects of the proposed curative notice shall remain the same.

Plaintiff's fourth and final request is for prospective relief enjoining BKV from "sending any misleading or materially incomplete communication to Class Members in the future." Doc. 43 at 3. As discussed above, parties are generally permitted to communicate with putative class members, including extending settlement offers. However, they are prohibited from sending misleading (either by way of affirmative misrepresentation or by material omission), coercive, or otherwise confusing communications. *See, e.g., Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 154 (D.D.C. 2002) ("Defendants are correct that settlements are looked upon favorably by the courts, particularly in complex class actions in which the Court's resources may be heavily taxed by prolonged litigation. Settlement cannot come, however, at the expense of the class action mechanism itself to the detriment of putative class members. The distribution of misleading information in order to exact early settlement agreements from putative class members or the use of coercive

tactics is just the kind of wrongful conduct that undermines the class action.") (internal citations omitted). Accordingly, consistent with this opinion, Plaintiff's fourth request for relief will be granted to the extent that all parties in this action will be enjoined from sending any misleading or materially incomplete communication to putative class members.[2]

## V. CONCLUSION

For the reasons outlined above, this Court will grant Plaintiff's Motion for Emergency Relief as modified. Doc. 43. A separate Order follows.

Robert D. Mariani
United States District Judge

---

[2] After this motion was fully briefed, Plaintiff informed the Court that BKV has sent a letter to putative class members to schedule "Landowner Town Hall Meetings" in order to discuss "the transition from Carrizo...and Reliance to BKV" and the "format and nature of royalty payments." Doc. 62 at 1. While Plaintiff concedes that the letters are not "expressly misleading," Plaintiff believes that the subject of the pending class action and the original BKV settlement offers *may* be discussed at these meetings. *Id.* at 1-2. BKV, on the other hand, avers that these are "annual" meetings held "in the ordinary course of business," and that these meetings include both putative class members and non-putative class members. Doc. 63 at 1-2. BKV states that the purpose of the meetings "is not to interfere with the *Slamon* case, but rather simply to meet with landowners and address any concerns they have." *Id.* at 2. BKV further avers that it is "prepared to avoid discussing its earlier communication to putative class members (and the related materials). If questions arise, BKV will simply say that the matter is pending before the Court and that BKV cannot discuss it until the Court issues a ruling." *Id.*

In light of BKV's representations in its letter (doc. 63), and the Court's ruling on the instant motion, BKV shall be permitted to host such "Town Hall Meetings" with landowners to discuss issues arising from the ordinary course of business. *See, e.g., Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C. 2002) (restricting defendants' communications with class members regarding the pending litigation, but noting that the court's "order will not be a blanket prohibition on communications with class members" and that defendants "will be permitted to continue engaging in the regular sorts of business communications with class members that occur in the ordinary course of business"). However, consistent with the Court's rulings, BKV shall be prohibited from engaging in any misleading or confusing communications regarding the pending litigation at those meetings, including, but not limited to, discussing any potential settlement offers without referencing putative class members to the curative notice to be sent by BKV.

13