# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SLAMON, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:16-CV-02187 |
| | : | (JUDGE MARIANI) |
| CARRIZO (MARCELLUS) LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the Motion of Plaintiff James Slamon and Plaintiff's

counsel LeVan Law Group and Berger Montague PC (collectively "Class Counsel") seeking

an Order from this Court establishing a Common Benefit Fund (Doc. 75). Specifically,

Plaintiff and Plaintiff's counsel assert that:

> [b]ased on Class Counsel's efforts in pursuing this Action, and in an attempt to
> release the claims brought in this case, Defendants BKV Chelsea LLC and BKV
> Operating LLC (collectively, "BKV") have made individual settlement offers to
> hundreds of putative Class Members which, in the aggregate, constitute many
> millions of dollars. Unless the Court orders the creation of a common benefit
> fund, putative Class Members who accept the BKV offer will have reaped the
> benefits of Class Counsel's years of effort without paying their fair share of the
> costs and fees associated with the litigation.

(*Id.* at 1-2). Accordingly, Plaintiff and Class Counsel request that the Court enter an Order:

> (i) establishing a common benefit fund to compensate Class Counsel for
> services rendered and to reimburse them for expenses incurred in conjunction
> with services benefitting putative Class Members who received and accepted

a settlement offer from BKV in exchange for releasing claims brought in this class action; (ii) directing Defendants, including in particular BKV, to hold back and set aside (a) 33 1/3% of any settlement payment (whether or not characterized as a "signing bonus") to any putative Class Member, for common benefit attorneys' fees; and (b) an additional 1 2/3% of any settlement payment (whether or not characterized as a "signing bonus") to any putative Class Member for common benefit costs and expenses incurred by Class Counsel herein; and (iii) directing Defendants to place the held-back and set-aside amounts into a "common benefit trust fund" established and maintained by Class Counsel, or by another escrow agent as directed by the Court.

(*Id.* at 2).

For the following reasons, Plaintiff's Motion will be denied.

## II. PROCEDURAL HISTORY

In this action, Plaintiff James Slamon claims that he and other similarly situated individuals were paid royalties on their oil and gas leases that were improperly calculated by Defendants, Reliance Marcellus II LLC, Reliance Holdings USA, Inc., (collectively "Reliance"), and Carrizo (Marcellus) LLC ("Carrizo").

On October 3, 2016, Slamon filed a five-count Complaint in the Court of Common Pleas of Susquehanna County, Pennsylvania seeking declaratory relief for breach of the terms of the Lease (Count I) and alleging breach of contract (Count II), breach of contract through a breach of the implied duty of good faith and fair dealing (Count III), and breach of fiduciary duty (Count IV), and requesting an accounting (Count V). (Doc. 1, "Tab A"; *see also*, Doc. 1-1). Defendants removed the case to this Court on October 31, 2016. (Doc. 1, at 1-6). Thereafter, Carrizo and Reliance filed separate motions to dismiss (Docs. 15, 17) which this Court by Opinion and Order (Docs. 30, 31) filed September 5, 2017 granted in

2

part and denied in part. The Court granted Defendants' motions to dismiss Count IV of Plaintiff's Complaint and Plaintiff's breach of fiduciary duty claim found in Count IV of his Complaint was therefore dismissed with prejudice. In all other respects, the Court denied Defendants' Motions to Dismiss. (See Doc. 31).

By Order dated June 15, 2018 (Doc. 46), the Court granted Plaintiff's unopposed Motion for Leave to File and Amend Complaint (Doc. 45). In that same Order, the Court ordered that it would schedule an evidentiary hearing to address Plaintiff's Motion for Expedited Emergency Relief Pursuant to Federal Rule of Civil Procedure (Doc. 43) upon receiving notice that all parties had been served with the Plaintiff's Amended Complaint which added BKV Operating LLC and BKV Chelsea LLC (collectively "BKV") as defendants in this case as successors-in-interest to the original defendants' rights under the putative Class Members' Paid Up Oil and Gas Leases. (See Pl.'s First Am. Compl. (Doc. 47)). Service of Plaintiff's Amended Complaint upon all Defendants was effected as confirmed in Plaintiff's counsel's letter to the Court dated June 16, 2018. (Doc. 48). Thus, by Order dated June 21, 2018, (Doc. 49), the Court scheduled an evidentiary hearing to be held on Plaintiff's Motion for Expedited Emergency Relief Pursuant to Federal Rule of Civil Procedure 23(d). The evidentiary hearing was held on June 27, 2018, and on that date, this Court ordered Defendants to file a brief in response to Plaintiff's Rule 23(d) Motion, required Plaintiff to file a brief in reply thereto and further ordered the following:

3. The parties shall make every good faith effort to agree upon the text of a proposed curative notice to putative class members, without reference to which

3

party may send the proposed notice, which is an issue reserved for the Court. The parties shall inform the Court of whether they have reached an agreement as to the text of a proposed notice, and if so, include the text of the proposed notice, in a letter to the Court by Thursday, July 5, 2018.

4. Defendants shall not effectuate any Release of Claims and/or Lease Amendment and Ratification materials executed by putative class members that Defendants have received, or any such materials that Defendants may receive, prior to the Court's ruling on Plaintiff's Rule 23(d) Motion (Doc. 43).

(Doc. 51, at ¶¶ 3, 4).

On July 10, 2018, Class Counsel informed the Court via letter that Plaintiff and BKV had agreed upon the text of a proposed curative notice to putative class members (Doc. 58) and attached the agreed-upon language thereto (Doc. 58-1).

After briefing by the parties, this Court, by Order dated July 27, 2018, granted as modified Plaintiff's Motion for Expedited Emergency Relief Pursuant to Federal Rule of Civil Procedure 23(d) and ordered the Defendants BKV Operating LLC and BKV Chelsea LLC to provide Plaintiff's counsel with the identity of all putative class members to whom BKV sent the disputed communication at issue in Plaintiff's Motion and a copy of such communications. (Doc. 65; *see also*, Doc. 64). In addition, the Court ordered BKV to send the proposed curative notice as set forth in Doc. 58-1 in full to all putative class members to whom BKV had sent the disputed communication at issue in Plaintiff's Motion, except that the deadline for responding to BKV's settlement offers was extended to August 31, 2018. The Court further ordered that "[a]ll other aspects of the proposed curative text (Doc. 58-1) shall remain the same." (Doc. 65, ¶ 1(b)). The Court's Order also provided:

4

c. Any previously executed cover letter, Full and Final Release, and/or Lease Amendment and Ratification (the "Materials") that any putative class member executed and returned to BKV is hereby declared **not enforceable** unless and until the class member re-signs and returns the Materials after receipt of the proposed curative notice.

d. All parties are hereby **enjoined** from sending any misleading or materially incomplete communications to putative class members in the future.

2. For the reasons set forth in the accompanying memorandum opinion [Doc. 64], parties may continue to engage in communications with putative class members that occur in the ordinary course of business, such an annually scheduled "Landowner Town Hall Meetings." Docs. 62, 63. However, parties shall be prohibited from engaging in any misleading or confusing communications regarding the pending action, including, but not limited to, discussing any potential settlement offers without referencing putative class members to the curative notice to be sent by BKV.

(*Id.* at ¶ 1(c-d); ¶ 2)(emphasis in original). The Court thereafter approved (Doc. 67) an

unopposed request for two non-substantive changes to the curative notices as set forth in a

letter of August 2, 2018 to the Court from counsel for the BKV Defendants (Doc. 66).

On August 30, 2018, Plaintiff and Plaintiff's counsel filed the Motion at issue here for

establishment of a common benefit fund. (Doc. 75).

On March 4, 2019, the Court granted a concurred-in motion by Plaintiff's counsel

(Doc. 90) for an amendment to the scheduling order which provided, *inter alia*, that Plaintiff's

Motion for Class Certification shall be due on July 15, 2019, with Defendants' responses to

be due on September 3, 2019, and Plaintiff's reply to be submitted by October 21, 2019.

(Doc. 91). On July 15, 2019, Plaintiff filed his first "Motion for Class Certification", moving

5

for class certification pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23 (b)(3). (Doc. 96).

### III. CONTENTIONS OF THE PARTIES

### A. Plaintiff's Assertions in Support of his Motion for an Order Establishing a Common Benefit Fund

Plaintiff and Class Counsel found this Motion on what they describe as a federal court's "equitable powers" to grant an attorney's fee award in the circumstance where a successful litigant has, through its efforts, conferred a common benefit upon other individuals who are not participants in the litigation. Thus, Plaintiff, in the brief in support of the motion states: "[i]ndeed, under the exercise of its equitable powers, a federal court may fashion an attorney's fees award to successful litigants who confer a common benefit upon a class of individuals not participating in the litigation." (Doc. 75-2, at 2). In support of this assertion, Plaintiff cites *Polonski v. Trump Taj Mahal Associates*, 137 F.3d 139, 145 (3d Cir. 1998) and *Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 391-392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). (*Id.*).

Plaintiff argues that "[i]t is beyond dispute that Class Counsel have been actively engaged with Defendants Carrizo (Marcellus) LLC ("Carrizo"), Reliance Marcellus II LLC and Reliance Holdings USA (collectively, "Reliance") for a substantial amount of time, having litigated this Action since October 2016. Class Counsel have spent considerable resources examining every potential facet of this case – investigating the claims, successfully opposing motions to dismiss, conducting fact discovery, retaining experts, and

6

researching potential damages for putative Class Members." (*Id.* at 2-3). Thus, Plaintiff argues that "[c]ourts have routinely implemented common benefit funds because of the potential for non-parties to the litigation to ride the coat-tails of the attorneys who have expended significant efforts litigating this case." (*Id.* at 3). Plaintiff asserts that Defendant BKV has made "substantial individual settlement offers to hundreds of putative Class Members" thus creating what Plaintiff terms an "actual risk" that these settlement offers create "a free rider" who settles his or her own claims to avoid paying for the work done by Plaintiff's counsel. (*Id.*).

Plaintiff notes that after conducting investigation and research, Class Counsel, on October 3, 2016, filed a Complaint on behalf of Plaintiff Slamon and further states that the Complaint was on behalf of "a proposed Class consisting of '[a]ll persons or entities who own property within the Commonwealth of Pennsylvania and who are, or have been, a royalty owner under a Paid Up Oil and Gas Lease with Defendants in which natural gas has been produced under the lease (the 'Class')." (*Id.* at 4). Plaintiff then states that he opposed motions to dismiss filed by Carrizo and Reliance, has served written discovery, including interrogatories and document requests on both Carrizo and Reliance and has engaged in additional discovery with respect to non-party DTE Energy Holdings, Inc., the broker through which Carrizo and Reliance purportedly sold gas produced on Plaintiff's property as well as the properties of the putative Class Members. (*Id.* at 5). Plaintiff also notes that on September 5, 2017, this Court issued a Memorandum Opinion denying Carrizo's and

Reliance's motions to dismiss with the exception of Plaintiff's breach of fiduciary duty claim set forth in Count IV which was dismissed. (*Id.*).

Plaintiff asserts that following his "successful opposition" to the motions to dismiss, "Class Counsel continued to vigorously pursue discovery from Defendants Carrizo and Reliance." (*Id.* at 6). Plaintiff further states that when Class Counsel learned of the acquisition by BKV of Carrizo's and Reliance's rights under the leases at issue, and that Carrizo had communicated with putative Class Members requesting consent to an assignment of their respective leases to BKV with a ratification of any prior assignments, including the Carrizo assignment to Reliance, that Class Counsel was successful in: obtaining a copy of the BKV Assignment Agreement; obtaining concessions from both Carrizo and Reliance that they would not interpret the ratification provision in the BKV assignment to impair any rights of Plaintiff or any putative Class Member; and obtained a redacted copy of the Purchase and Sale Agreement between BKV and Carrizo and Reliance. (*Id.* at 7).

Thus, Plaintiff argues:

> In short, up until the time when BKV made individual settlement offers to hundreds of putative Class Members, Class Counsel had, on behalf of Mr. Slamon and the proposed Class, vigorously pursued the claims at issue in this case, survived a motion to dismiss, and spent hundreds of thousands of dollars in time and out-of-pocket expenses positioning the case for success.

(*Id.* at 8).

Next, Plaintiff asserts that when BKV "sent letters to hundreds of putative Class

Members offering a 'signing bonus'" and requested that the putative Class Member either

sign a Lease Amendment and Ratification and a Full and Final Release of all claims,

including those in the action before this Court, or only a Release without a Lease

Amendment, that the efforts by Defendants to obtain either the Lease Amendment and

Ratification with a Full and Final Release of all claims or a Release without a Lease

Amendment from the putative Class Members were the direct result of Plaintiff counsel's

efforts in this case.

Plaintiff and Plaintiff's counsel summarize their theory in support of their Motion for

the Establishment of a Common Fund as follows:

> In essence, the putative Class Member is *releasing the exact claims at issue in*
> *this case* that have been vigorously pursued by Plaintiff and Class Counsel for
> nearly two years. The consideration for giving up these claims against BKV,
> Carrizo, and Reliance is, according to the terms of the Release, "TEN
> DOLLARS ($10.00)," but, in reality, is the "signing bonus" monies, which range
> from $100 to more than $260,000. There can be little doubt that the "signing
> bonus" is exactly what it appears to be – a settlement offer to settle the claims
> in the instant case.

(*Id.* at 10)(emphasis in original).

Plaintiff makes a similar argument for those putative Class Members who received

an offer that included an Amendment in addition to the Release, arguing that "while the

Release addresses all claims brought in this action but in particular the royalty

underpayment contentions, the Amendment also addresses the valuation contentions that

have been vigorously pursued by Plaintiff and Class Counsel." (*Id.* at 11). Plaintiff notes

9

that the settlement offers to putative Class Members who were sent the Amendment in addition to the Release "range from several hundred dollars to more than $460,000." (*Id.*).

Based on the above-stated assertions, Plaintiff's motion requests that the Court establish a common benefit fund for the payment of attorney's fees and expenses from individual settlements. Plaintiff, citing the decisions in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); and *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), then argues:

> The common benefit doctrine recognizes the federal courts' inherent authority to prevent unjust enrichment by those who benefit from the efforts of counsel in class proceedings and similar litigation, whose risk, investment, and effort generates, enhances, or protects a fund or benefit enjoyed by such beneficiaries.

(Doc. 75-2, at 12). Plaintiff, citing *Hall v. Cole*, *supra*, states that the "origins of this doctrine can be traced to the common fund rule whereby those who share in a fund must participate in paying attorney's fees when a prevailing plaintiff's litigation redounds to the benefit of the common fund." (*Id.* at 12-13). Plaintiff also cites to *Polonski v. Trump Taj Mahal Associates*, arguing that "[a]s the Third Circuit held in *Polonski*, under the exercise of its equitable powers, a federal court may fashion an attorney's fees award to successful litigants who confer a common benefit upon a class of individuals not participating in the litigation." (*Id.* at 13-14).

After setting forth the criteria established by the Third Circuit in *Polonski* for determining whether a fee award is appropriate under the common benefit doctrine, Plaintiff notes that "[w]hether a plaintiff is entitled to an award of attorney's fees and expenses under the common benefit doctrine is left to the discretion of the district court." (*Id.* at 14)(citing *Hall,* 412 U.S. at 15).

Plaintiff argues that the work performed by Class Counsel satisfies the "three-part test" set forth in *Polonski* for an award of attorney's fees under the common benefit/common fund analysis.

First, Plaintiff argues that "Class Counsel's efforts spanning nearly four years in investigating, researching, and litigating the facts and legal claims at issue have resulted in the substantial settlement offers made by BKV to putative Class Members." (Doc. 75-2, at 15). Plaintiff argues that "[n]ow, after successfully opposing multiple motions to dismiss and with the evidence developed and collected as the result of Class Counsel's efforts in this Action over multiple years, BKV has presented all (or nearly all) putative Class Members with *de facto* settlement offers, despite almost none of them having initiated their own litigation against Carrizo, Reliance, or BKV." (*Id.* at 15-16). Plaintiff argues that in the absence of the current litigation before this Court "there is simply no reason to believe BKV would have offered multiple millions of dollars to settle these claims, regardless of BKV's characterization of the offers as a 'signing bonus'." (*Id.* at 16).

Second, Plaintiff argues that the members of the class to whom Class Counsel has provided this benefit "is easily identifiable and ascertainable", reasoning that BKV had sent individual settlement offers to hundreds of putative Class Members and has produced copies of each of the original communications. (*Id.* at 16-17).

Third, Plaintiff argues that because BKV has a "discrete list of individual putative Class Members that have accepted the BKV offer and the exact amounts of those settlements, the Court has a reasonable basis to spread the costs of the litigation to those settling putative Class Members and to do so in a proportionate manner by ordering BKV (or any other Defendant who directly or indirectly funds the settlement payments) to hold back a set percentage of each individual settlement for a determination of an appropriate attorneys' fee and allocation of expenses." (*Id.* at 17).

Finally, Plaintiff in his brief in support of the motion stresses that "Class Counsel requests only that these funds be *withheld* at this point, not awarded and paid to Class Counsel." (Doc. 75-2, at 19). Plaintiff adds that the common benefit fund whose establishment Plaintiff and Class Counsel request is "not a guarantee that Class Counsel be paid any set amount" adding that no amounts will be disbursed without a review and approval by the Court. (*Id.*).

### B. Defendants' Responses to Plaintiff's Motion

In response, each Defendant has filed a brief in opposition to Plaintiff's motion. The brief of Defendants BKV Operating LLC and BKV Chelsea LLC (Doc. 77) begins with the

12

assertion that "BKV purchased a number of the leases at issue in this case from Defendants Carrizo and Reliance after this lawsuit had already been filed. When BKV first contacted lessors, it was not a party to this action." (*Id.* at 1). BKV acknowledges that it sought to renegotiate that section of the lease agreement to which various lessors are or were a party which addresses how the price paid to lessors for oil and gas extracted from the wells established under the leases is calculated. Likewise it acknowledges that it offered to pay lessors money in exchange for a lease amendment and release of past claims. (*Id.*).

Then, characterizing Plaintiff and Class Counsel as engaging in a "blatant money grab", BKV argues that Plaintiff and Class Counsel are attempting to deprive those Pennsylvania lessors with whom BKV has entered into settlements of the benefit of the bargain they reached. Specifically, BKV argues that Class Counsel is attempting to force the lessors and BKV to place 35% of all funds BKV agreed to pay the lessors into a "Common Benefit Fund." (*Id.*).

BKV then sets forth its reasons why the motion of Plaintiff and Plaintiff's counsel should be denied. First, BKV argues that if it

> completes its settlement with potential class members before class certification, then the Court is without jurisdiction to order the recipients to contribute a portion of their payments to compensate Class Counsel. In other words, because there has been no class certification and the potential class members do not have individual lawsuits pending before the Court, the Court does not have authority to order that the potential class members contribute a portion of their settlements for payment of Class Counsel's fees.

(Doc. 77, at 6).

13

BKV argues that there has been no class certification in this case and instead that "[a]ll that currently exists is a collection of individual claims that _might_ be pursued as a class action under Rule 23." (_Id._ at 7) (emphasis in original). The BKV Defendants assert that "once individual lessors settle with BKV, their claims become moot and necessarily are no longer a part of any case or controversy before the Court." (_Id._). Accordingly, BKV argues that the Court has no subject matter jurisdiction over those claims or any settlement related to those claims.

Second, BKV argues that because there has been no certification of a class, no "proper notice" of the action and no opportunity to "opt out", there is no basis upon which to conclude that any absentee plaintiff has consented to being subject to the Court's jurisdiction. (_Id._ at 8). Further, BKV asserts that to the extent that the curative communication from BKV to the lessors was "proper notice" of this action, the "settling lessors are expressly choosing _not_ to be a party to this litigation, which they have a right to do." (_Id._)(emphasis in original). From this BKV argues that the Court has no personal jurisdiction over the settling lessors. In support of this assertion, BKV cites numerous cases both from within the Third Circuit and from other jurisdictions. (_See id._ at 8-11).

BKV additionally argues that there was no causal connection between its decision to seek lease amendments, ratifications and releases, and the litigation before this Court. Instead, it argues that its decision to do so was a "business decision made by BKV because it wished to pay royalties going forward in a manner that would be mutually agreeable to

BKV and the lessors – and BKV was willing to pay substantial consideration to the lessors to do so." (Doc. 77, at 12). BKV further argues that it sought to clarify how royalties were to be calculated and paid so as to avoid future liability by obtaining amendments to the oil and gas leases which spell out how royalty calculations are paid. It also offers that a substantial portion of the consideration offered by BKV to the settling lessors was for the lease amendments and not for the releases. Thus, it argues that the payments are not "settlement payments" for any claim and therefore should be excluded from any "Common Benefit Fund" if the Court were to determine that a fund is appropriate. (Id.).

Next, BKV argues that the "common benefit doctrine does not apply to payments received by any settling lessor." (Id. at 15). It again asserts that its decision to seek lease amendments and releases was not the result of the litigation before this Court but rather "an independent business decision made by BKV – before it was a party to this action – because it wished to pay royalties going forward in a manner that would be mutually agreeable to BKV and the lessors." (Id.).

In a footnote BKV points out that historically the "common benefit doctrine applied in cases such as shareholder derivative suits and labor disputes, where the plaintiff vindicates rights on behalf of an entire class." It further acknowledges that courts now "also rely on the common benefit doctrine to create funds and award fees to lead counsel or committees in MDL or consolidated proceedings out of fees that would be paid to individual plaintiffs'

lawyers." It concludes, however, that this case "does not fall into either of these typical scenarios where the common benefit doctrine applies." (*Id.* at 15 n.7) (collecting cases).

The other Defendants have, as noted, also submitted responses in opposition to Plaintiff's Motion for an Order Establishing a Common Benefit Fund. Defendants Reliance Marcellus II, LLC and Reliance Holdings USA Inc. ("Reliance") state simply that "[t]here are no allegations that Reliance has extended any offers related to the lease amendments and ratifications. . . . There are no allegations that Reliance has participated in the lease amendments and ratifications extended by Defendants BKV Operating LLC and BKV Chelsea, LLC." (Doc. 76, at 2). Reliance accordingly argues that there is no legal or factual basis in the record for the relief sought as against Reliance.

Defendant Carrizo (Marcellus) LLC, in its brief in opposition to Plaintiff's Motion begins with the statement that:

> As a threshold matter, Carrizo notes that Mr. Slamon has pointed to no case in which a court has done what he asks this Court to do. Mr. Slamon filed a lawsuit, opposed motions to dismiss and engaged in written discovery. But there has been no judicial determination that Mr. Slamon's legal contentions are correct or that the pendency of the lawsuit caused BKV to make the offers it did. Nonetheless, Mr. Slamon asks this Court to order sequestration of significant amounts of money belonging to third parties who are not before the Court and who have been given no notice or opportunity to be heard about Mr. Slamon's request – all because Mr. Slamon believes that, if he ultimately prevailed in the litigation, he would have a right to those funds.

(Doc. 78, at 1-2).

Carrizo argues that the Supreme Court's decision in *Hall v. Cole* only allows an award of attorney's fees under the common benefit doctrine in the circumstance where "the

16

plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the cost proportionately among them." (Id. at 2) (quoting Hall, 412 U.S. at 5). Carrizo further cites the Supreme Court's decision in Mills v. Electric Auto-Lite Company, stating that "the proponent of a common-benefit fund [must] satisfy three requirements: (1) the plaintiff must confer a substantial benefit, (2) to members of an ascertainable class and (3) the court must ensure that the costs are proportionally spread among that class." (Id.)(citing Mills 396 U.S. at 393-394). Carrizo asserts that Plaintiff and Plaintiff's counsel cannot satisfy these criteria nor those set forth by the Third Circuit in Polonski v. Trump Taj Mahal Associates. (Id. at 3).

In addition, Carrizo asserts that there is no indication that Plaintiff Slamon has given notice to those non-party landowners from whom one-third of the payment due from BKV to them would be placed in an account for ultimate payment to Plaintiff's counsel. (Id.).

Carrizo rejects Slamon's contention that Plaintiff's counsel is entitled to the establishment of a fund under the common benefit doctrine as set forth by the Supreme Court in Sprague v. Ticonic National Bank, arguing that "[t]here is nothing equitable about a proceeding affecting the funds of third parties who have been given no opportunity to be heard. " (Doc. 78, at 4).

Carrizo further denies that Slamon has conferred a "substantial benefit" on the landowners from whom one-third of the monies paid to them would be placed in this sought

17

after common benefit fund. As to Slamon, Carrizo asserts that "[h]e filed and has maintained a lawsuit. But he has not at present established any rights that will flow to those landowners. He alleged that Carrizo, Reliance and now BKV have miscalculated his natural-gas royalty, but the Court has made no such finding." (*Id.* at 5). Carrizo argues that the reasoning and result in *Polonski* and in *Mills* do not support the Plaintiff's Motion requesting the establishment of a common benefit fund since, in *Polonski*, the Third Circuit declined to require members of the union to pay Plaintiff's counsel fees since the union itself was a party to the litigation and liable for its breach of a duty of fair representation owing to those members, whereas in *Mills*, the Supreme Court ruled that the minority shareholders of Auto-Lite were entitled to fees from Auto-Lite and derivatively, from all of its shareholders. The *Mills* Court arrived at this conclusion on the premise that the plaintiff shareholders had proven a violation of federal law and had thereby conferred a benefit on all shareholders in doing so. (*Id.* at 5-6).

Carrizo also asserts that in this case Slamon and Plaintiff's counsel have obtained no determination as to the correctness of their position with respect to their asserted interpretation of the royalty payments provisions of the lease between Slamon and BKV and its predecessors. Carrizo argues "there is no record evidence that the mere pendency of the lawsuit was the basis for BKV's offers and, so, it is not a situation like *Mills* in which an asserted benefit is traceable to the plaintiff's action." (*Id.* at 7).

## C. Plaintiff's Reply to Defendants' Opposition

In Plaintiff's Reply Memorandum (Doc. 79), counsel reiterates the essential premise underlying the motion: "[t]he court's inherent equitable jurisdiction plainly extends to a class of individuals not participating in the litigation." (*Id.* at 3). Plaintiff then quotes from *Sprague v. Ticonic National Bank*, as follows:

> ***Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation.*** Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, . . . the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree – hardly touch[es] the power of equity in doing justice as between a party and the beneficiaries of his litigation.

(*Id.*)(quoting *Sprague*, 307 U.S. at 166-167)(emphasis in brief).

Slamon also addresses the "money grab" accusation directed at Plaintiff and Class Counsel, stating that they:

> have not asked the Court to order recipients of BKV's settlement offer to do anything; instead, they seek an order that ***BKV*** (and, if ever appropriate, the other Defendants) place monies into a common benefit fund. Any such award would not be a "windfall" or "money grab" by "depriving" settling putative Class Members of the "benefit of their bargain" with BKV. Indeed, BKV has it completely backwards: The point of the common benefit doctrine is *to prevent unjust enrichment and free-riding* by those who have benefitted from Plaintiff and Class Counsel's efforts – namely, settling putative Class Members.

(*Id.* at 5-6)(emphasis in original).

In support of their request for the establishment of a common benefit fund, Plaintiff and Plaintiff's counsel assert that "Class Counsel have spent years investigating and litigating the very claims that settling putative Class Members are getting paid for, but Class Counsel (unlike counsel for Defendants) have received absolutely no compensation for their efforts during that time, and have spent tens of thousands of dollars out-of-pocket in addition to their uncompensated time." (Doc. 79, at 6).

Plaintiff cites to *Turner v. Murphy Oil USA, Inc.*, 422 F.Supp.2d 676 (E.D. La. 2006) as instructive. (Doc. 79, at 6). There, after Hurricane Katrina had caused extensive flooding, suit was brought in 27 consolidated class actions filed on behalf of several thousand persons claiming damage in connection with the escape of 25,110 barrels of crude oil from a 250,000 barrel above-ground storage tank at Murphy Oil's refinery in St. Bernard Parish, Louisiana. There, the Plaintiffs' Steering Committee ("PSC") moved for an order to set-aside 15% of the gross of any settlements of represented persons within the class boundary for class counsel attorney's fees as well as 7% of the gross for class counsel's costs. The Court, on January 30, 2006, certified these 27 cases as a class action and granted the PSC's motion for class certification for all persons living within the area described in the class definition. Thereafter, on March 15, 2006, the PSC filed the set-aside motion. The PSC asserted that its motion was directed toward two sets of claimants – one, individuals who had opted out, retained lawyers, and filed lawsuits, and two, individuals who had opted out and retained counsel for purposes of settlement. Thus, the Court noted that

"[t]he motion is not aimed at individuals who accept a settlement offer 'that would have been made regardless of class certification [,]' according to the PSC. Thus, the PSC's motion does not cover settlements made or to be made by individuals directly with Murphy without the assistance of counsel." *Turner*, 422 F.Supp.2d at 678-679.

Plaintiff and Plaintiff's counsel also address Defendants' argument that this Court lacks personal jurisdiction over putative Class Members. (Doc. 79, at 7). To this contention, Plaintiff responds that "Class Counsel are not asking settling putative Class Members to pay money into a common benefit fund; they are asking BKV (or the other Defendants) to do so." (*Id.*). Plaintiff and Plaintiff's counsel argue that Plaintiff's counsel, as putative Class Counsel, has provided a substantial benefit to settling lessors. It rejects BKV's argument that the offers of settlement it made to the settling lessors were made when BKV was not a Defendant, calling this contention "specious". (*Id.* at 9). Plaintiff points out that BKV did not make two offers but instead, BKV was ordered by this Court to issue a curative communication "effectively rescinding the original offers, as any offer that had been previously accepted was no longer valid." (*Id.*). In addition, Plaintiff and Plaintiff's counsel argue that contrary to Carrizo's contentions, "Class Counsel need not have achieved a final ruling or judgment in order to show that a substantial benefit was provided. Numerous courts have held that the key inquiry is whether there is a causal link or nexus between the litigation and the benefit provided." (*Id.* at 10)(citing *In re Maniaci-Canni*, 2013 WL 5314348 at *4 (E.D.N.Y. 2013); *New Leadership Committee v. Davidson*, 23 F.Supp.2d 301, 303,

308-309 (E.D.N.Y. 1998); *Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir. 1984); *Goldberg v. Hall*, 1988 WL 215393 at *4 (S.D.N.Y. 1988)).

On this basis, Plaintiff and putative Class Counsel assert that they filed and maintained a lawsuit "which directly resulted in 126 settlement offers made solely in exchange for a release of the claims brought in this lawsuit." (Doc. 79, at 11). Likewise, they claim that with respect to the other 196 settlement offers, which included both a release and a material amendment to the lease provision at issue in this case, BKV has conceded that it values the lease amendment at only $500/acre which, in the view of Plaintiff and Plaintiff's counsel, indicates that any remaining portion of the offer was based solely and exclusively on a release of the claims brought in this lawsuit. (*Id.* at 11-12).

With these summaries of the parties' contentions having been set forth, the Court will address their legal and factual merit.

## IV. ANALYSIS

A review of the governing case law and the current posture of this action demonstrate that Plaintiff's "Motion for an Order Establishing a Common Benefit Fund" (Doc. 75) must be denied.

First, there has been no class certification under Fed.R. Civ. P. 23 in this case. Plaintiff filed his Motion for an Order Establishing a Common Benefit Fund on August 30, 2018, and 11 months later, moved for the first time for class certification (Doc. 96). That

motion is not yet ripe as Defendants' responses are due on September 3, 2019, and Plaintiff's reply thereafter on October 21, 2019 (*see* Doc. 91).

Second, Plaintiff has not achieved the status of a successful litigant, either by judgment or settlement of his claim.

Third, there is no clear nexus between Plaintiff's filing of his Complaint and this Court's denial of Defendants' motions to dismiss Plaintiff's Complaint (with the exception of Count IV for breach of fiduciary duty) and the settlement offers which BKV made in accordance with this Court's Memorandum Opinion (Doc. 64) and Order (Doc. 65) filed July 27, 2018, which granted as modified Plaintiff's Motion for Expedited Emergency Relief Pursuant to Federal Rule of Civil Procedure 23(d) (Doc. 43), ordered the BKV Defendants to provide Plaintiff's counsel with the identity of all putative Class Members and which further ordered that BKV send a curative notice, the text of which is set forth in Doc. 58-1, to all putative Class Members to whom BKV had sent the communication which Plaintiff's Motion deemed to be false or misleading and which extended the deadline to such putative Class Members for responding to BKV's settlement offers until August 31, 2018. The Court's Order of July 27, 2018, also declared "not enforceable" any previously executed cover letter, Full and Final Release, and/or Lease Amendment and Ratification that any putative Class Member had executed and returned to BKV "unless and until the Class Member re-signs and returns the Materials after receipt of the proposed curative notice."

Plaintiff has not submitted sufficient evidence that any settlement offers accepted by members of the putative class were so accepted as a result of Plaintiff's lawsuit. BKV asserts that it commenced negotiation for amendments to the oil and gas leases to which the putative Class Members, as lessors, were party with it or its predecessors, Defendants Carrizo and Reliance, before Plaintiff's suit was filed. Moreover, as this Court has previously ruled, Defendants may negotiate settlement with potential members of a class prior to class certification. *See Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 213 (2d Cir. 1987)("[A]t least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class."); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003)("A defendant . . . has the right to communicate settlement offers directly to putative class member[s].")(quoting *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 548 (S.D. Iowa 2000)); *In re Southeastern Milk Antitrust Litig.*, 2009 WL 3747130, at *3 (E.D. Tenn. Nov. 3, 2009)("Against this general backdrop, it is clear then that the defendants may discuss settlement offers with putative class members prior to class certification, as a general rule.").

The development of the common benefit fund as an instrument by which the court may do equity begins, in the modern era, with *Sprague v. Ticonic National Bank*. In *Ticonic*, petitioner Sprague delivered money to the Ticonic National Bank in trust for her and others' beneficial interest. Part of the money was to be deposited by the Bank in its Savings Department with the rest of the funds to be deposited by the Bank in its Commercial

Checking Department awaiting investment or distribution, to be secured by an appropriate amount of bonds set aside in its Trust Department as required by law. The People's National Bank subsequently took over Ticonic's assets including the bonds in question and assumed the indebtedness of the Ticonic Bank. People's Bank then closed and both banks were placed in receivership. Thereafter, Sprague and her beneficiary filed suit in District Court against the banks and the banks' receiver to place a lien upon the proceeds of the bonds for their trust deposit. The District Court sustained the claim and entered a decree for the payment of plaintiff's claim with interest. 307 U.S. at 162-163. Sprague sought reasonable counsel fees and litigation expenses to be paid out of the proceeds of the bonds, reasoning that "by vindicating her claim to a lien on the proceeds of the earmarked bonds to the amount of her trust funds, she had established as a matter of law the right to recovery in relation to fourteen trusts in situations like her own; that she had prosecuted the litigation solely at her own expense; that although the total assets of the bank were not sufficient to satisfy the unsecured creditors, the proceeds of the bonds were more than sufficient to discharge all trust obligations". *Id.* at 163. The District Court held that it had no authority to grant the petition, and the First Circuit affirmed. The Supreme Court reversed the decision so that the District Court could entertain the petition for reimbursement "in the light of the appropriate equitable considerations" in accordance with the Court's opinion. *Id.* at 169.

In the course of reaching this ruling, the Supreme Court laid out the elements for the creation of a common benefit fund and payment therefrom of counsel fees to the successful

party who, in succeeding on its claim, has conferred a benefit on other persons as well. The

Court explained that the *stare decisis* effect of the ruling in Sprague's favor necessarily

established the claims of the other 14 trusts making claims on the same bonds so that

Sprague was entitled to petition the District Court for allowance of attorney's fees and

expenses from those other persons similarly situated who would benefit from her successful

litigation:

> To be sure, the usual case is one where through the complainant's efforts a
> fund is recovered in which others share. Sometimes the complainant avowedly
> sues for the common interest while in others his litigation results in a fund for a
> group though he did not profess to be their representative. The present case
> presents a variant of the latter situation. In her main suit the petitioner neither
> avowed herself to be the representative of a class nor did she automatically
> establish a fund in which others could participate. But in view of the
> consequences of stare decisis, the petitioner by establishing her claim
> necessarily established the claims of fourteen other trusts pertaining to the
> same bonds.

307 U.S. at 165-166.

Similarly, in *Mills v. Electric Auto-Lite Company*, the Supreme Court, following

*Ticonic,* held that the successful suit brought by the minority shareholders of the company,

establishing that a corporate merger was accomplished through the use of a proxy

statement that was materially false or misleading and established a violation of the

applicable security laws by their corporation and its officials, conferred a benefit upon all

other shareholders such that the minority shareholders were entitled to reimbursement by

the corporation for the cost of establishing the violation. 396 U.S. at 389-390. The Court

26

departed from the "general American rule" that "attorneys' fees are not ordinarily

recoverable as costs," stating that:

> A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. *See Fleischmann Corp. v. Maier Brewing Co.*, 386 U.S., at 718-719, 87 S.Ct. at 1407. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense. This suit presents such a situation. The dissemination of misleading proxy solicitations was a 'deceit practiced on the stockholders as a group,' *J. I. Case Co. v. Borak*, 377 U.S., at 432, 84 S.Ct. at 1560, and the expenses of petitioners' lawsuit have been incurred for the benefit of the corporation and the other shareholders.

*Id.* at 391-392.

The Court in *Mills* also made clear that the authority of the chancellor to do equity

arose not only in the circumstance where the litigation produced or preserved a "common

fund" for the benefit of a group but also applied where the litigation has produced a decision

entitled to "*stare decisis*." *Id.* at 393.

Finally, the Court concluded:

> To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit.

*Id.* at 396-397.

The requirement of a successful suit as a basis for the establishment of a common

fund by which to compensate counsel for fees incurred in that action was reiterated in *Hall*

*v. Cole*. There, the Supreme Court held that an award of counsel fees to a successful union

member in a suit brought under § 102 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 412, fell "squarely within the traditional equitable power of federal courts to award such fees whenever 'overriding considerations indicate the need for such a recovery.'" 412 U.S. at 9 (quoting *Mills*, 396 U.S. at 391-392). The Court determined that the union member's successful suit, which vindicated his own right to free speech guaranteed by § 101(a)(2) of Title I of the LMRDA "necessarily rendered a substantial service to his union as an institution and to all of its members." *Id.* at 8. The Court placed its decision within what it termed an "established exception" to the traditional American rule which does not provide for the allowance of attorney's fees in the absence of statutory or contractual authorization. Thus, it stated:

> Another established exception [to the American rule] involves cases in which the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'

*Id.* at 5 (quoting Mills, 396 U.S. at 393-394).

With respect to *Mills*, the Court noted that "we approved an award of attorneys' fees to successful shareholder plaintiffs in a suit brought to set aside a corporate merger accomplished through the use of a misleading proxy statement in violation of § 14(a) of the Securities Exchange Act of 1934 . . . ." *Id.* at 6-7.

In *Polonski v. Trump Taj Mahal Associates*, the Court made clear that the requirements for the application of the common benefit doctrine begin with the exercise of a

federal court's equitable powers to fashion an award for attorney's fees to successful

litigants who confer a common benefit upon a class of individuals not participating in the

litigation. The Court's analysis is worth setting forth at length here.

> We now turn to the merits of this appeal. By way of background, it is well established that the traditional American rule disfavors the award of attorney's fees in the absence of statutory or contractual authorization. *Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters and Joiners*, 456 U.S. 717, 721, 102 S.Ct. 2112, 2114–15, 72 L.Ed.2d 511 (1982). Under the exercise of its equitable powers, however, a federal court may fashion an attorney's fees award to successful litigants who confer a common benefit upon a class of individuals not participating in the litigation. *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 391-92, 90 S.Ct. 616, 625-26, 24 L.Ed.2d 593 (1970). At the heart of this exception is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs. As explained by the Supreme Court, "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* at 392, 90 S.Ct. at 625. The origins of this doctrine can be traced to the common fund rule whereby those who share in a fund must participate in paying attorney's fees when a prevailing plaintiff's litigation redounds to the benefit of the common fund. *See Hall v. Cole*, 412 U.S. 1, 5 n. 7, 93 S.Ct. 1943, 1947 n. 7, 36 L.Ed.2d 702 (1973); 1 Dan B. Dobbs, Law of Remedies § 3.10(2) (2d ed. 1993).

> Under the common benefit doctrine, an award of attorney's fees is appropriate where "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall*, 412 U.S. at 5, 93 S.Ct. at 1946 (quoting *Mills*, 396 U.S. at 393-94, 90 S.Ct. at 626-27). This test entails satisfying three distinct elements: (1) the plaintiff must confer a substantial benefit; (2) to members of an ascertainable class; and (3) the court must ensure that the costs are proportionally spread among that class. Because this test may be read literally to include every lawsuit against any institutional defendant, we have refined this language further. In *Marshall v. United Steelworkers*, 666 F.2d 845, 848 (3d Cir. 1981), this court inquired: (1) whether the benefits may be traced with some accuracy; (2) whether the class of beneficiaries are readily

29

identifiable; and, (3) whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting.

137 F.3d at 145.

The cases discussed herein by this Court, while recognizing the ability of the court to exercise its equitable powers to establish a common benefit fund and/or require that nonparties to a proceeding be made to share in the costs of litigation, require that the party seeking an award of counsel fees from the nonparties must have been successful in the suit either by an award of money or by the establishment of a principle of law that may be cited by others under the doctrine of *stare decisis*. Here, Plaintiff Slamon is not a successful litigant under the case law which has delineated the circumstances under which the court's equitable powers may be used to establish a common benefit fund or otherwise require nonparties to participate in the payment of counsel fees on the basis that a benefit has been conferred upon them through the successful litigation.

In addition, a substantial body of case law exists to establish that where, as here, no class certification has been obtained by the plaintiff, the common benefit doctrine does not provide a basis for an award of counsel fees among those who have yet to be certified as part of the class. For example, in the context of Multi-District Litigation cases, the Fourth Circuit has held that a District Court did not have the authority to compel contribution to the Steering Committee of plaintiffs' lawyers for discovery-generated expense from plaintiffs in state or federal litigation who were not before the court and by claimants who had chosen not to litigate but to compromise their claims outside of court. The case, *In Re Showa*

*Denko K.K. L- Tryptophan Products Liability Litigation – III v. Showa Denko K.K.*, 953 F.2d

162 (4th Cir. 1992), reversed a District Court's order compelling contributions from plaintiffs

in state or federal litigation who were not before the court as well by claimants who had not

chosen to litigate but to compromise their claims outside of the court. The Circuit explained

in its ruling:

> Paragraphs 2 and 3 of Order No. 7 require plaintiff's counsel to contribute
> $1,000 and 0.5% of the value of settlement or verdict "in all cases presently
> filed or later filed in these proceedings." While these paragraphs apparently
> limit their scope to parties to the litigation before the court, paragraph 4 applies
> the obligations of paragraphs 2 and 3 "to actions venued in state courts,
> untransferred federal cases, and unfiled claims in which any MDL defendant is
> a party or payor." The order thus compels contributions from plaintiffs in state
> or federal litigation who are not before the court and by claimants who have
> chosen not to litigate but to compromise their claims outside of the court.
> Contrary to the suggestion of the plaintiffs' steering committee, this
> impermissible reach of paragraph 4 is not mitigated by the opportunity under
> paragraph 5 to obtain a waiver of assessments by petitioning the district court.
> To take advantage of this opportunity, the claimant is compelled to file a petition
> in the district court, yet the court has no jurisdiction to compel such a procedure
> in the first instance. Claimants who have not sued and plaintiffs in state and
> untransferred federal cases have not voluntarily entered the litigation before
> the district court nor have they been brought in by process. The district court
> simply has no power to extend the obligations of its order to them.

*Id.*at 166.

Similarly, in *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976), an Alaska

Airlines plane crashed in Alaska, causing the deaths of all 111 persons aboard. Two of the

persons killed were Mabel Sampson and Harvey Golub. The Sampson Estate was

represented by counsel but filed no lawsuit. The executrix of the Golub Estate brought suit

against Alaska Airlines in Alaska. The Judicial Panel on Multi-District Litigation entered an

Order that a specified number of actions were transferred to the Northern District of California and assigned for coordinated or consolidated pretrial proceedings. The actions so transferred did not include the Sampson claim or the Golub actions. The Court assigned to the Multi-District Litigation issued an order requiring all parties plaintiff to reimburse plaintiff's liaison counsel for expenses and disbursements incurred in discovery proceedings including depositions, production of documents, exhibits, administration and coordination of discovery as well as the cost of reproduction and distribution of discovery materials and documents as may be required. Id. at 993-996. The lawyers representing the Sampson Estate received a written offer from counsel for Alaska Airlines indicating that the offer of settlement made to them required approval of the District Court. Id. at 996.

With respect to the Sampson Estate, the personal representative did not file suit and counsel for Sampson Estate did not sign the stipulation regarding discovery. Nonetheless, the District Court, in approving the compromised settlement, ordered the law firm for the Sampson Estate to deposit with the Clerk 5% of the settlement to be retained as a portion of a common fund for distribution and payment of costs and services, commonly incurred and expended on the question of liability. Similarly, with respect to the Golub Estate, the District Court entered an order approving a settlement and again ordering the deposit with the Clerk in the sum of $28,971.00, "which cash, subject to the order of the court, be retained by the Clerk as a portion of a common fund for distribution and payment for costs and services commonly incurred and expended on the question of liability to be hereafter determined as

above set forth by the court, jurisdiction for which is to be reserved." *Id.* at 999. The Court

of Appeals found that the District Court was without jurisdiction to order the Sampson or

Golub estates to make such deposits on a common benefit basis. With respect to the

Sampson Estate, the Court stated:

> In Sampson, the likelihood is more remote than in Golub, since the District
> Court had not even a semblance of jurisdiction – original, ancillary or pendent
> – to order anything or anybody, and least of all to compel lawyers who are not
> parties to the action to pay $3,250 into a fund. There was just "no action"
> pending anywhere.

> In Golub, the question is closer, although we are unable to find in any of the
> District Court's orders a reservation by it for a redetermination of the amounts
> due to the Discovery Committee for its efforts and skill when at the same time
> we are conscious that Cohen should not be extended or abused, since it is of
> paramount importance that the guardians of Federal appellate procedure be
> constantly alert in their apprehension of piecemeal review.

*Id.* at 1001.

The Ninth Circuit therefore granted writs of mandamus and directed the District Court

to "forthwith cause the Clerk of his Court to withdraw the funds deposited as described in

this Opinion, together with the interest accrued thereon, and return the proceeds without

undue delay to the respective appellants." *Id.* at 1002.

The decision in *Hartland* was followed in *Vincent v. Hughes Air West, Inc.,* 557 F.2d

759 (9th Cir. 1977). There, the Circuit held that the District Court had no authority to require

a claimant who had never filed suit, but rather had only engaged in non-judicial activities in

order to reach a settlement, to contribute funds from which the multi-district litigation lead

counsel's attorneys' fees would be paid and that claimants who had reached a settlement

prior to the appointment of lead counsel in the multi-district litigation could not be required to

contribute to a special class fund. The Court of Appeals observed:

> If parties to a suit cannot confer subject-matter jurisdiction on a federal court
> by agreement, certainly "nonparties," people who have never been made
> parties to a suit anywhere, cannot confer such jurisdiction by failing to raise
> their voices above some unspecified decibel count in protest against the
> attempted exercise of jurisdiction.

557 F.2d. at 766. Further, the Court noted:

> The only plausible basis for valid District Court jurisdiction over Vincent or her
> settlement is the class action. But as is discussed in detail . . ., the class
> certification order of October 12, 1972 was erroneous. No valid class action
> including Vincent among its unnamed plaintiffs ever existed.

*Id.* Accordingly, the Court reversed the District Court's order and directed that Vincent's

contribution to the Special Class Fund plus accrued interest, be returned to her. *Id.*

In addition, the Third Circuit's decision in *In re Prudential Insurance Company*

*America Sales Practice Litigation Agent Actions v. Prudential Insurance Company of*

*America*, 148 F.3d. 283 (3d Cir. 1998), makes clear that class certification was a

requirement for the award of attorney's fees in the circumstance where a class settlement

was reached and approved and attorney's fees awarded thereon. The Court of Appeals, in

affirming the certification of the proposed class and the approval of the settlement, held that

the District Court properly found it had personal jurisdiction over the proposed class. The

Court of Appeals explained that personal jurisdiction over the members of the proposed

class followed from class certification and the resultant notices of the impending class action

and the opportunity of class members to exclude themselves from the class:

34

The district court also found it had personal jurisdiction over all members of the proposed class. We agree. In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment. Consequently, silence on the part of those receiving notice is construed as tacit consent to the court's jurisdiction. *Id.*; *see also Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 199 (3d Cir.1993).

The district court here directed that notice of the class action be sent to all persons who owned one or more Prudential insurance policies between 1982 and the present. Initially, we note the provision of individual notice to each class member is by no means typical of the notice provided in most class actions, and certainly qualifies as unprecedented. The notice provided here met the requirements for personal jurisdiction. It explained that each individual receiving notice was a member of the proposed class, and clearly set forth the procedure for opting out of the class. The notice also contained the proposed release, which explained that all claims would be waived if the individual did not elect to opt out of the class. Consequently, we find the members of the proposed class were adequately informed of their potential claims against Prudential, and the district court had personal jurisdiction over those members of the putative class who did not timely opt out.

148 F.3d at 306.

The decision in *In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 644 (E.D. Pa. 2003) represents a case where the District Court ruled that, in order to compensate class counsel for work which conferred a common benefit on all claimants, it could require creation of a fund out of proceeds from opt-out or "tag-along" suits, but only following certification of a class and a motion by class counsel for an order sequestering a portion of

any recovery obtained by buyers who had opted out of the class action and brought

independent "tag-along" suits.

In *In re Diet Drugs (Phentermine/Fenfluramine, Dexfenfluramine) Product Liability Litigation,* 582 F.3d 524 (3d Cir. 2009), the Circuit reiterated the requirements for the application of the common benefit doctrine:

> "Under the common benefit doctrine, an award of attorney's fees is appropriate where 'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Polonski,* 137 F.3d at 145 (quoting *Hall,* 412 U.S. at 5, 93 S.Ct. 1943). Thus, in order to obtain common benefit fees, an attorney must confer a substantial benefit to members of an ascertainable class, and the court must ensure that the costs are proportionately spread among that class.

*Id.* at 546.

Here again, without recounting the intricacies of this multi-district nationwide products liability class action, it nonetheless may be said that class certification and a successful conclusion to the litigation which confers a substantial benefit on the members of an ascertainable class are prerequisites of the application of the common benefit doctrine.

Moreover, even in the circumstance where a class has been certified, in *In re OSB Antitrust Litigation,* 2009 WL 579376 (E.D. Pa. 2009), the District Court found that it was without jurisdiction to award class counsel fees from settlements described as "funded almost entirely from the monies held in the opt-out escrow accounts" created when an opt-out entity pursued its own claim against a defendant, in which case 25% of the settlement

was made part of the settlement funds to be distributed to the Class and Plaintiffs' Counsel.

*Id.* at *1. The District Court, in response to the assertion by the various defendants that it was without jurisdiction to grant counsel's request stated:

> I agree that I do not have jurisdiction to order the opt-outs to pay from the settlement monies they have already received the fees sought by Class Counsel. To the extent that I have jurisdiction over any funds that have not yet been disbursed to the opt-outs, I conclude that distribution of these monies to Class Counsel is not warranted.

*Id.* at *2. In support of this decision the Court wrote:

> The settling opt-outs are not bound by [the jurisdictional] provision [in the Court's Final Approval Orders] because they are not members of the Class. Indeed, each Final Approval Order listed all the opt-outs and provided that "This Order shall have no force or effect on these persons or entities."

*Id.* Further, the Court noted:

> Jurisdiction over a "common fund" is "generally satisfied by jurisdiction over a party that controls the fund." Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* 68 (2d ed. 2005). The money the opt-outs have already received from settlement funds is obviously no longer under the control of either Plaintiffs or Defendants. Accordingly, the common fund doctrine does not afford me jurisdiction to order non-Parties – such as the opt-outs – to pay Class Counsel's fees. *See id.* at 94 ("In general, a court cannot order fees paid by beneficiaries personally if they are not party to the litigation."); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457 (7th Cir. 1997) (opt-outs are no longer class members and thus not parties).
>
> My conclusion that I am without jurisdiction over the opt-outs is consistent with those reached in analogous cases. *See In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig. II*, 953 F.2d 162, 165–66 (4th Cir. 1992) ("As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power."); *Hartland v. Alaska Airlines*, 544

F.2d 992 (9th Cir.1976) (granting writ of mandamus and ordering district court to return funds deposited by nonparties into a discovery fund in a multi-district case); *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 644 (E.D. Pa. 2003) (in MDL case, court lacked jurisdiction to award counsel fees from settlements or judgments secured by former class members who opted out).

*Id.* at 3.

Thus, again, while the facts of *OSB Antitrust Litigation* involve a circumstance where class certification was obtained and a settlement reached, the case emphasizes the need for class certification and further points out that "settling opt-outs are not bound by [the jurisdictional] provision [in the Court's Final Approval Orders] because they are not members of the Class," *id.* at *2. *See also, In re Lidoderm Antitrust Litigation,* 2017 WL 3478810, at *3 (N.D. Cal. 2017)("Once a class member opts-out, it is no longer a party to any case before me and I no longer have jurisdiction over it or over the monies due to it (absent their filing a new action in federal court which is transferred to this MDL proceeding).").

At this juncture, in the case before this Court, the absence of class certification and the resulting lack of personal jurisdiction over the settling lessors as well as the absence of any litigation success by Plaintiff Slamon require that his motion for the establishment of a common benefit fund be denied.

The cases cited by Plaintiff in his Reply brief for the proposition that "Class Counsel need not have achieved a final ruling or judgment in order to show that a substantial benefit was provided" (Doc. 79, at 10), are inapposite or entirely unsupportive of Plaintiff's motion.

Plaintiff first cites *In re Maniaci-Canni*, noting the Magistrate Judge's statement therein that "[i]n cases where something short of a judgment by the court resolves a lawsuit, such as a settlement, fees and costs may still be awarded under the common benefit doctrine." (Doc. 79, at 10) (quoting *In re Maniaci-Canni*, 2013 WL 5314348, at *4 (E.D.N.Y. 2013)). That statement may well be accurate, but in this case, there has been no settlement of Plaintiff's lawsuit against BKV and the other Defendants and, in fact, as previously noted, class certification is not ripe and has yet to be ruled upon. Further, in *Maniaci-Canni,* the Court found that equitable considerations which would warrant the plaintiff's claim for the imposition upon other plaintiffs of expert fees were not present. Thus, the Court observed:

> Further, Sofia [the party seeking reimbursement of expert fees when the matter settled] has not adequately demonstrated that the Respondents were unjustly enriched at Sofia's expense, or that the expert reports were the catalyst or the proximate cause of the benefits the Respondents gained through the settlement.

*In re Maniaci-Canni*, 2013 WL 5314348, at *8. Further, the Court noted that the matter involved "five claimants" all of whom were represented by counsel throughout the case. *Id.* at *9. The Court also emphasized that there was no "lead counsel, liaison counsel, or maritime counsel designated to perform the bulk of the work in this case on behalf of all claimants." *Id.* Instead:

> [e]ach party, including the Respondents, was represented by his or her own respective attorneys at all court conferences and at every stage of the litigation, including the (i) investigative stage (ii) preparation and interposing of pleadings; (iii) formulation of discovery demands and/or responses; (iv) day-to-day handling of the litigation; (v) summary judgment and (vi) settlement negotiations.

*Id.* Finally, the Court noted that Plaintiff Sofia "was aware that Respondents had retained their own experts." *Id.*

Thus, the decision in *Maniaci-Canni* provides no support for Slamon in this case where no settlement has been reached and there is no evidence of efforts on the parts of Plaintiff's counsel establishing a causal nexus between the work done at the preliminary stages of this lawsuit and the lease amendments and releases entered into by the Defendants and the various settling lessors on their individual leases with BKV.

Plaintiff's citation to *New Leadership Committee v. Davidson*, 23 F.Supp.2d 301 (E.D.N.Y. 1998), advanced for the proposition that the "absence of judgment is not a bar to an award of attorney's fees under the common benefit doctrine where plaintiff can demonstrate that the litigation was the catalyst or approximate cause for the result that produces benefits for class" (Doc. 79, at 10), is also unavailing. Similar to *Hall v. Cole*, *supra*, *New Leadership Committee* presented a suit by members of the Flushing New York Local of the American Postal Workers Union against certain local union officers and appointed members of the election committee of the Local. Plaintiffs there alleged violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, and the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiffs alleged a scheme by the defendants to suppress dissent within the Local. However, before an evidentiary hearing was held on the motion for preliminary injunction brought by the Plaintiffs, the parties agreed to settle some of the claims at issue. Following the hearing, which addressed some of the

remaining claims, a report and recommendation was issued granting relief to Plaintiffs on these remaining claims. Thereafter, the parties entered into a stipulation in which the defendants agreed to provide the relief recommended by the magistrate judge and settled all remaining claims. Plaintiffs then sought attorney's fees incurred in responding to Defendants' objections to the report and recommendation and the supplemental report to which no objections were filed. 23 F.Supp.2d at 302-303. The Court issued a recommendation that Plaintiffs be awarded attorney's fees in the amount of $54,986.25. This amount was increased by an award of costs in a supplemental report and recommendation granting $567.05 for such costs. *Id.* at 306, 313.

The basis for the award of attorney's fees and costs, however, provides Slamon with no support for his claim for the establishment of a common benefit fund. Since *Hall v. Cole*, it is well settled in cases brought under the LMRDA, where members of the union are successful, by judgment or settlement, in reforming the unlawful practices of their union and, in particular, vindicating the free speech and voting rights of Title I of that statute, that a common benefit has been conferred upon all members of the union such that attorney's fees are properly paid from the union's treasury. *See New Leadership Committee*, 23 F.Supp.2d at 307-309 (collecting cases).

The decision in *Goldberg v. Hall*, 1988 WL 215393 (S.D.N.Y. 1988) cited by Plaintiff (Doc. 79, at 10), presents merely another case where the award of attorney's fees granted was preceded by findings made which were "adverse to the defendants" but which the Court

nonetheless found showed "[t]he nexus between plaintiff's lawsuit and the union's reversal of the decision [prompting Plaintiff's suit] evident." Goldberg, 1988 WL 215393, at *5.

With respect to *Koppel v. Wien*, 743 F.2d 129 (2d Cir. 1984), cited by Plaintiff as "reversing and remanding for a determination of fees where plaintiff showed the result obtained was proximately caused by the lawsuit even though no final determination had been entered and the action had been dismissed as moot" (Doc. 79, at 10), the Court of Appeals in *Christensen v. Kiewit-Murdock Investment Corporation*, summarized its prior decision in *Koppel* as follows:

> In *Koppel*, two participants in a real estate venture sued two of the venture's general partners, seeking to enjoin a modification of the venture agreement. After commencement of the law suit, the defendants decided not to modify the agreement, and the suit was dismissed. The issue before our Court was whether the law suit "entitle[d] the plaintiffs to recover their attorney's fees for having conferred a benefit on the [venture's] participants." 743 F.2d at 130. In remanding the case to the district court to consider whether there was a causal connection between the law suit and the defendants' decision not to modify the agreement, we suggested that a fee award against the defendants might be appropriate if it "would result in a pass-through of such litigation costs to all the [venture's] participants." *Id.* at 135. We observed that "[t]he better course, however, would be to impose any award directly upon [the venture]." *Id.*

815 F.2d 206, 211 (2d Cir. 1987).

*Koppel,* therefore, is not a case addressing the application of the common benefit fund doctrine in the circumstances such as those present here, where a lawsuit has been initiated, class certification has only recently been moved for and has yet to be granted, no settlement has been reached and no judgment entered, and there is an attempt to impose on putative Class Members an obligation to pay counsel fees to Plaintiff's counsel, who is

42

also putative class counsel, for settlements entered into by lessors of Defendants BKV (and its predecessors, also Defendants here) prior to any class certification, settlement or judgment.

Plaintiff also cites *In re FedEx Ground Package System, Inc., Employment Practices Litigation*, 2011 WL 611883 (N.D. Ind. 2011), for the proposition that the Court's power to issue a set-aside order "creating a common benefit fund" in a class action, multi-district litigation, or similar complex litigation "is unquestioned." (Doc. 79, at 4).

In *FedEx*, a multi-district litigation case, co-lead counsel sought creation of a fund to be used to compensate themselves and all counsel who worked in the Multi-District Litigation for the benefit of all plaintiffs. The Court denied the motion without prejudice "in the event of reversal of this court's summary judgment opinions currently on appeal." 2011 WL 611883, at *1. The Court had issued an order that in most cases the Plaintiff FedEx drivers were independent contractors and not employees of FedEx. The litigation had spawned four categories of cases: those in which the court granted class certification but held the plaintiffs to be independent contractors; cases in which the court granted class certification and found the plaintiffs to be employees as a matter of state law; cases in which the court denied class certification which were then remanded; and fee shifting cases involving Title VII discrimination claims for violations of other federal labor laws which were also remanded. *Id.*

Co-lead MDL counsel requested that the Court enter an order that would create a common benefit fund for the compensation of co-lead and MDL counsel that would have established a special master to decide petitions for reasonable attorney's fees and costs to be paid by FedEx. *Id.* at *2. The proposal also addressed non-fee shifting claims and encouraged co-lead counsel to settle with local counsel and to require submission of disputes to a special master to decide the proper allocation of fees and costs. Counsel representing the South Dakota plaintiffs objected to the motion in whole and argued that the court did not have jurisdiction over the cases it had remanded before the entry of a set-aside order. *Id.* The Court denied the motion for the entry of a common benefit set aside order "without prejudice in the event of a reversal of this court's summary judgment opinions on appeal, and in that circumstance this court will not re-visit attorney fee issues related to remanded cases." *Id.* at *7. While the Court acknowledged its jurisdiction to "ensure the fair and equitable distribution of attorneys' fees among the various plaintiffs' attorneys in this MDL litigation, including any MDL member case filed in, removed to, or transferred to this court under the auspices of this litigation," it also made clear:

> [t]his court doesn't have jurisdiction over cases never actually before this court, whether state or federal, even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court.

*Id.* at *3. The Court further indicated that it denied the motion for entry of a set-aside order creating a common benefit fund for two reasons:

(1) the merits of the core of this litigation have been decided against the plaintiffs in all but a few cases; and (2) the plaintiffs acknowledge what this court suspected, which is that the nature of the cases remanded or yet to be remanded are such that any allocation of attorneys' fees must be determined on a case by case basis.

*Id.* at *5.

Plaintiff in the present action misquotes the Court in *FedEx*, presumably for brevity's

sake. What the Court there stated is as follows:

The court's power to issue a set-aside order creating a common benefit fund in a multi-district litigation is unquestioned. "The 'common fund' doctrine allows a court to distribute attorneys' fees from a common fund created by settlement or judgment in a class action" or similar complex litigation.

2011 WL 611883, at *5. However, the Court also noted that:

Set-aside orders creating common benefit funds usually are created early in a litigation in anticipation of the plaintiffs' success. No authority suggests a practice of creating common benefit funds when the plaintiffs haven't succeeded on the core of their litigation. *Cf. In re Air Crash Disaster*, 549 F.2d at 1017 ("The power of the court to order compensation, and payment of it . . . is reinforced by the body of law concerning the inherent equitable power of a trial court to allow counsel fees and litigation expenses out of the proceeds of a fund that has been created, increased or protected by *successful* litigation." (emphasis in the original).

*Id.* at *6.

Because *FedEx* involved multi-district litigation, there are many aspects of that case

which have no application here; however what does have application are the principles cited

by the Court therein that: (1) a court does not have jurisdiction over cases not actually

before it; and (2) the power of the court to order compensation and to allow counsel fees in

litigation expenses out of the proceeds of a fund requires that the fund has been created,

45

increased, or protected by successful litigation. *See also*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

Finally, this Court is constrained to point out that, as a result of this Court's Order of July 27, 2018, Defendant BKV was required to send curative notices, the text of which is set forth in Doc. 58-1, to all putative Class Members to whom BKV had sent prior communications which the Plaintiff had challenged as misleading, false or incomplete. The Court's Order declared that any settlement entered into by BKV with any lessor party to an oil and gas lease with BKV which required the execution of a cover letter, a Full and Final Release and/or a Lease Amendment and Ratification was unenforceable unless and until the class member re-signed and returned the cover letter, Full and Final Release and/or Lease Amendment and Ratification (collectively designated the "Material") **after** receipt of the curative notice. The curative notice specifically notified members of the putative class that Plaintiff Slamon had filed a complaint on behalf of himself and others similarly situated against Carrizo and Reliance and was seeking to have the case certified as a class action on behalf of "[a]ll persons or entities who own property within the Commonwealth of Pennsylvania and who are, or have been, a royalty owner under a Paid Up Oil and Gas Lease with Defendants in which natural gas has been produced under the lease (the 'Class')." The notice identified Attorney LeVan of the LeVan Law Group, LLC, and Attorney Abramson of Berger & Montague P.C. as representing Plaintiff Slamon in the class action. The notice set forth the claims alleged in the class action as well as BKV's acquisition of the

46

class leases from Carrizo and Reliance. Further, the notice explained the "BKV Materials" and the consequence of signing the cover letter, the Lease Amendment and Release. The notice stated in bold print that "[b]y signing the Materials, you will be entitled to receive a sum certain within 60 days, but will be precluded from joining the Class and potentially will be giving up valuable claims." (Doc. 58-1).

In addition the notice warned:

You may be entitled to more (or less) money under the claims asserted in the Class Action.

(*Id.* at 3). The notice further provided: "[y]ou should also note that if you sign the Materials to accept BKV's offer, Class Counsel may claim entitlement to a portion of your signing bonus funds as attorneys' fees under the 'common benefit doctrine.'" (*Id.*).

Despite the extensive explanation offered to members of the putative class and, perhaps more importantly, notwithstanding this Court's Order rendering unenforceable any prior execution of a cover letter, release, or lease amendment so as to allow putative Class Members an opportunity to decide against settling their claims against BKV and the other Defendants in light of the intent of Plaintiff to seek class certification, various lessors nonetheless again entered into releases and lease amendments with BKV in exchange for valuable consideration.

From this sequence of events, the Court cannot draw the inferences which Plaintiff argues should be drawn: (1) that the filing of Plaintiff's lawsuit and its actions thereafter in opposing motions to dismiss and engaging in discovery present a clear nexus between

those actions and the individual settlements undertaken by various lessors; (2) so as to allow the conclusion that this lawsuit has conferred a substantial benefit upon the settling lessors which (3) requires the establishment of a common benefit fund.

## V. CONCLUSION

For the forgoing reasons, Plaintiff's Motion for an Order Establishing a Common Benefit Fund (Doc. 75) will be denied.[1]

A separate Order follows.

Robert D. Mariani
United States District Judge

---

[1] The Court also notes that other than argument set forth in his brief, Plaintiff has not provided this Court with any evidence by deposition, affidavit or otherwise showing the required "clear nexus" between Plaintiff's initiation of suit and his efforts thereafter and the individual settlements entered into by any individual lessor within the putative class.