## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANIE SLAMON, as Executrix of the Estate of James Slamon, and ERIC LEWIS, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CARRIZO (MARCELLUS) LLC, RELIANCE MARCELLUS II, LLC, RELIANCE HOLDINGS USA, INC., BKV OPERATING LLC, and BKV CHELSEA, LLC,<br><br>　　　　Defendants. | Civil Action No. 3:16-cv-02187 |

## DEFENDANTS RELIANCE MARCELLUS II, LLC AND RELIANCE HOLDINGS USA, INC.'S REPLY IN SUPPORT <u>OF MOTION FOR SUMMARY JUDGMENT</u>

**REED SMITH LLP**

Justin H. Werner
Alex G. Mahfood
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
(412) 288-3063 (facsimile)
jwerner@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendants*
*Reliance Marcellus II, LLC and*
*Reliance Holding USA, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT..........................................................................................2

A.    Plaintiffs Improperly Attempt To Shift Their Burden Of Proof
To Reliance on the "Highest Price" Class Claims. ...............................2

B.    Plaintiffs' Claim That Defendants Converted The NEPA Leases
From "Gross Leases" Into "Net Leases" Is Fundamentally
Wrong. ..................................................................................................3

C.    The Fact Issues Plaintiffs Attempt To Create Are Not Material
To The Relevant Inquiry Under The Plain And Unambiguous
Definitions Of "Arm's-Length" And "Unaffiliated." ...........................5

1.   Plaintiffs Do Not Identify Any Issues Of Fact Under The
Plain Meaning Of "Arms' Length And "Unaffiliated."..............6

2.   Plaintiffs' Claim That DTE Was Indifferent To Purchase
Price Is Legally Irrelevant And Factually Incorrect. ..................7

3.   Plaintiffs' Claim That The Parties' Did Not Consider DTE
To Be An "Arm's Length" "Unaffiliated" Buyer Is
Legally Irrelevant And Factually Unsupported. ......................10

4.   The Evidence On Which Plaintiffs Rely To Claim That
Reliance "Controlled" DTE Does Not Create An Issue Of
Fact. .......................................................................................13

D.    Plaintiffs' Attempts To Distinguish The Directly Applicable
Fail. .....................................................................................................16

E.    Plaintiffs' Individual Claim For Breach Of The Implied
Covenant Of Good Faith And Fair Dealing Fails As A Matter Of
Law. ....................................................................................................18

F.    Because Plaintiffs' Breach Of Contract Claims Fail, Their
Accounting Claim Fails As Well. .......................................................20

III.  CONCLUSION....................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert Einstein Med. Ctr. v. Sebelius*,
566 F.3d 368 (3d Cir. 2009) ............................................................................8

*American Consulting Corp. v. U.S.*,
454 F.2d 473 (3d Cir. 1971) ...........................................................................10

*Brown v. 1401 New York Ave., Inc.*,
25 A.3d 912 (D.C. 2011) ...........................................................................10, 11

*Caldwell v. Kriebel Res. Co.*,
72 A.3d 611 (Pa. Super. 2013) ........................................................................18

*Canfield v. Statoil USA Onshore Properties, Inc.*,
No. CV 3:16-0085, 2017 WL 1078184 (M.D. Pa. Mar. 22, 2017) ...................20

*CBS, Inc. v. Capital Cities Comm'cs*,
448 A.2d 48 (Pa. Super. 1982) ........................................................................15

*Chambers v. Chesapeake Appalachia, L.L.C.*,
359 F. Supp. 3d 268 (M.D. Pa. 2019)........................................................4, 5, 19

*Coastal Forest Resources Company v. Chevron U.S.A., Inc.*,
2021 WL 1894596 (W.D. Pa. May 11, 2021). Dkt. 205 ...................................18

*EQT Prod. Co. v. Magnum Hunter Prod., Inc.*,
768 Fed. App'x 459 (6th Cir. 2019) ...........................................................17, 18

*Hall v. CNX Gas Co., LLC*,
137 A.3d 597 (Pa. Super. 2016) ........................................................................6

*Henceroth v. Chesapeake Exploration, L.L.C.*,
2019 WL 4750661 (N.D. Ohio Sept. 30, 2019), *aff'd*, 814 Fed.
App'x 67 (6th Cir. 2020) ...........................................................................16, 17

*Hordis v. Cabot Oil & Gas Corp.*,
2020 WL 2128968 (M.D. Pa. May 5, 2020)......................................................20

*Hutchison v. Sunbeam Coal Corp.*,
   519 A.2d 385 (Pa. 1986) ...................................................................................18

*Jeanes Hosp. v. Sec'y of Health and Human Servs.*,
   448 Fed. App'x 202 (3d Cir. 2011) .............................................................7, 8, 9

*Meacham v. Knolls Atomic Power Lab.*,
   554 U.S. 84 (2008) ............................................................................................3

*Newman Development Grp. of Pottstown, LLC v. Genuardi's Family
   Market, Inc.*,
   98 A.3d 645 (Pa. Super. 2014) ...........................................................................15

*Northwest Hospital, Inc. v. Hospital Serv. Corp.*,
   500 F. Supp. 1294 (N.D. Ill. 1980) ...............................................................13, 14

*Pflasterer v. Range Resources-Appalachia, LLC*,
   2019 WL 4242057 (W.D. Pa. Sept. 6, 2019)......................................................20

*Roco, Inc. v. EOG Resources, Inc.*,
   2016 WL 6610896 (D. Kan. Nov. 9, 2016) ........................................................16

*Sehl v. Vista Linen Rental Serv., Inc.*,
   763 A.2d 858 (Pa. Super. 2000) ........................................................................15

*Tennant v. Range Resources-Appalachia, LLC*,
   2021 WL 4288365 (W.D. Pa. Sept. 21, 2021)......................................................3

*Volunteer Firemen's Ins. Servs., Inc. v. CIGNA Prop. & Cas. Ins.
   Agency*,
   693 A.2d 1330 (Pa. Super. 1997) ........................................................................6

*Ware v. Rodale Press, Inc.*,
   322 F.3d 218 (3d Cir. 2003) ...............................................................................2

*Weston and Co., Inc. v. Bala Golf Club*,
   391 Fed. App'x 152 (3d Cir. 2010) ....................................................................14

*Zehentbauer Family Land LP v. Chesapeake Exploration, LLC*,
   450 F. Supp. 3d 790 (N.D. Ohio 2020) .............................................................17

**Statutes**

13 Pa. C.S. §1302(a) ................................................................18

**Other Authorities**

Affiliate, Black's Law Dictionary (11th ed. 2019)....................................6

Arm's-Length, Black's Law Dictionary (11th ed. 2019) .........................................6

## I.    INTRODUCTION

In seeking to avoid summary judgment from being entered against them, Plaintiffs: (1) attempt to shift the burden of proof to Reliance; (2) ignore the framework for analyzing unambiguous contracts under Pennsylvania law; (3) invent definitions of the terms "arm's-length" and "unaffiliated" as used in the NEPA Leases that conflicts with their plain meaning; (4) rely on irrelevant evidence (most of which concerns different Defendants altogether) that fails to support the propositions Plaintiffs assert; and (5) attempt to distinguish Reliance's case law on inapposite and inaccurate grounds.

Plaintiffs have not met their burden in opposing summary judgment.  As to the "Highest Price" Class claims, Plaintiffs bear the burden of proving that Reliance's sale of gas to DTE was not an "arm's-length" transaction to an "unaffiliated" third-party.  As Plaintiffs admit, these terms are unambiguous and Pennsylvania courts define them by reference to a dictionary, not medicare cases or inadmissible expert opinion.   The record evidence ***that relates to Reliance*** demonstrates that Reliance's sale of gas to DTE satisfied the plaining meaning of those terms.  And the few shreds of irrelevant evidence Plaintiffs recite do not create a genuine issue of material fact even under Plaintiffs' invented definitions.

Plaintiffs' arguments as to the "No Deductions" class fare no better.  The record is undisputed that Reliance paid royalties based on the price it received from

its sales to DTE at the wellhead without any deductions, as provided in the NEPA Leases and as confirmed by Plaintiffs' own testimony.  Reliance always treated Plaintiffs the same as it treated itself, and it received the same price from DTE as Plaintiffs.  Plaintiffs' arguments that Reliance could have or should have sold gas in a different way which may have required a different royalty calculation under the NEPA Leases are meaningless.  The case law confirms Reliance's interpretation, and Plaintiffs' efforts to distinguish it are unpersuasive (while also failing to cite any case law holding in their favor).

After years of discovery, Plaintiffs have failed to come forward with any evidence showing that there is a triable issue of fact in this case involving the interpretation of unambiguous contractual terms.

## II.   ARGUMENT

### A.   Plaintiffs Improperly Attempt To Shift Their Burden Of Proof To Reliance on the "Highest Price" Class Claims.

As they did in their Motion (Dkt. 193 at 28-31), Plaintiffs seek to shift the burden of proof on their "Highest Price" Class claims to Defendants.  (Dkt. 205 at 11-14).  However, Pennsylvania law requires that Plaintiffs bear the burden of proof on their breach of contract claims.  The purported "proviso" is not a burden-shifting exculpatory provision but rather is an alternative valuation provision.

In Pennsylvania, a plaintiff bears the burden of proving the elements of a claim for breach of contract.  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003);

*Tennant v. Range Resources-Appalachia, LLC*, 2021 WL 4288365, at *2-*7 (W.D. Pa. Sept. 21, 2021); Dkt. 189 at 15-16; Dkt. 209 at 9-10.  Plaintiffs' argument on burden shifting appears to be rooted in inapplicable ADEA case law in which the court held that an exemption from liability for a disparate impact claim for employer actions based on reasonable factors other than age—"laid out apart from the prohibitions (and expressly referring to the prohibited conduct as such)"—created an affirmative defense for which the employer bears the burdens of production and persuasion.  *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008).  The instant case, however, is not a statutory ADEA discrimination case, and the alternative pricing formula in the NEPA Leases is neither an "exemption from liability" nor an affirmative defense.  Dkt. 209 at 8-14.

The purported "proviso" in the NEPA Leases introduces an alternative valuation method that establishes the price on which Reliance must base royalties when it sells gas at arm's-length to an unaffiliated third-party.  Dkt. 209 at 12-14. Plaintiffs bear the burden of proving their claim of breach.

## B.  Plaintiffs' Claim That Defendants Converted The NEPA Leases From "Gross Leases" Into "Net Leases" Is Fundamentally Wrong.

Plaintiffs argue that Reliance "effectively convert[ed] gross leases into net leases" by selling gas to DTE at the wellhead and thereby "saddling" Plaintiffs with post production costs.  Dkt. 205 at 16.  Plaintiffs' use of this terminology is misleading, ignores the facts, and actually highlights why their claims fail.

The NEPA Leases in the "Highest Price" Class provide for a royalty based on the "gross amount of revenue *paid to Lessee*[.]"  Dkt. 193-5 at 17 (emphasis added); *Chambers v. Chesapeake Appalachia, L.L.C.*, 359 F. Supp. 3d 268, 279 (M.D. Pa. 2019) ("A proceeds clause sets the lessor's royalty as a percentage of the proceeds *received by the lessee* from the sale of oil or gas." (citations omitted) (emphasis added)).  Plaintiffs would have this Court believe that the NEPA Leases require Reliance to base royalties on the gross amount of revenue *paid to DTE* downstream, which they clearly do not.  Plaintiffs would have this Court ignore the fact that a market for gas existed at the wellhead, where Reliance sold gas to DTE, and *nothing in the NEPA Leases prevents wellhead sales*.  Contrary to Plaintiffs' claims, Defendants have not "unilaterally chos[en]" to sell gas at the wellhead.  Dkt. 205 at 16.  Rather, Reliance chose to sell, *and DTE chose to buy*, gas at the wellhead.  Two parties chose to participate in the sale transaction.

While Plaintiffs posit that *had* Reliance chosen to sell gas downstream, it would have incurred post-production costs that it could not have deducted from Plaintiffs' royalties (*id.* (citing Dkt. 205-5 ¶94)), Plaintiffs ignore the fact that Reliance sold gas to a willing buyer at the wellhead and therefore received a wellhead, not a downstream, price for that gas.  Reliance did not receive a downstream price, but turn around and base Plaintiffs' royalties on a wellhead price.  Reliance received a wellhead price from DTE and based Plaintiffs' royalties on that

same exact wellhead price that it received.  *Chambers*, 359 F. Supp. 3d at 279 ("Thus, under the plain language of the royalty clauses, Plaintiffs are only entitled to royalties based on what [the lessee] receives for the gas it sells, not the market value of the gas.").  The record shows that Reliance based Plaintiffs' royalties on the "gross amount of revenue *paid to Lessee*" as required by the NEPA Leases.  Reliance treated itself and Plaintiffs in exactly the same manner.  Dkt. 189 at 21 n.6.  Plaintiffs' admonitions regarding the "overriding effect and financial consequences of Defendants' legal position" are without merit.  Dkt. 205 at 15.

## C.   The Fact Issues Plaintiffs Attempt To Create Are Not Material To The Relevant Inquiry Under The Plain And Unambiguous Definitions Of "Arm's-Length" And "Unaffiliated."

Plaintiffs admit that the NEPA Leases are unambiguous.  Dkt. 205 at 39 n. 30.  But, contrary to Pennsylvania law on the interpretation of unambiguous terms, Plaintiffs suggest definitions of "arm's-length" and "unaffiliated" derived from inapplicable case law and inadmissible expert opinion.  Plaintiffs ultimately advocate interpretations of the NEPA Leases that conflict with their plain meaning and Plaintiffs' testimony as to their understanding of the NEPA Leases.  Alternatively, even accepting Plaintiffs' definitions at face value, the evidence on which Plaintiffs rely still fails to establish that there is a triable issue of fact.

### 1. Plaintiffs Do Not Identify Any Issues Of Fact Under The Plain Meaning Of "Arms' Length And "Unaffiliated."

An oil and gas lease must be construed according to the terms of the agreement as manifestly expressed through the accepted and plain meaning of the language used. *Hall v. CNX Gas Co., LLC*, 137 A.3d 597, 601 (Pa. Super. 2016). Ordinary meanings—through dictionary definitions—are given to words unless circumstances show that a different meaning is applicable. *Volunteer Firemen's Ins. Servs., Inc. v. CIGNA Prop. & Cas. Ins. Agency*, 693 A.2d 1330, 1340 n.9 (Pa. Super. 1997).

The dictionary defines "arm's length" as "[o]f, relating to, or involving dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power; not involving a confidential relationship[.]" Arm's-Length, Black's Law Dictionary (11th ed. 2019). The dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Affiliate, Black's Law Dictionary (11th ed. 2019). "Unaffiliated" means not affiliated.[1]

---

[1] Plaintiffs' testimony confirms this definition of "unaffiliated" as used in the NEPA Leases. Ms. Slamon testified that "unaffiliated would mean not related to." Dkt. 189-8 at 33:11-34:18. Mr. Lewis testified that "unaffiliated third party" meant that "it's not somebody that is under the same corporate umbrella. It's a totally separate entity." Dkt. 189-9 at 57:20-58:14.

The undisputed record demonstrates that: (1) Reliance and DTE are unrelated and unaffiliated corporate entities (Dkt. 189 at 23-24, 26-28); and (2) there is no evidence of unequal bargaining power between Reliance and DTE (*id.* at 23-24). This is confirmed by the industry-standard sales contract under which Reliance and DTE did business—the NAESB (*id.* at 24-26).   Plaintiffs do not contest this framework for interpreting contracts.   Plaintiffs do not contest the dictionary definitions on which Reliance relies.   Plaintiffs do not contest the undisputed evidence showing that Reliance's sale of gas to DTE satisfies these definitions. Plaintiffs have not met their summary judgment burden of showing a triable issue of fact under the plain meaning of the NEPA Leases.

### 2. Plaintiffs' Claim That DTE Was Indifferent To Purchase Price Is Legally Irrelevant And Factually Incorrect.

Plaintiffs first attempt to create an issue of fact by claiming that DTE was not an "arm's length" buyer because it was allegedly indifferent to the price at which it resold Reliance's gas.  Dkt. 205 at 17-20.

Plaintiffs' claim depends on this Court enforcing an inapplicable definition of "arm's-length[.]"  Plaintiffs assert that "where a [party] negotiates . . . in total disregard of the price, the transaction cannot be considered at arm's length."  *Id.* at 17 (quoting *Jeanes Hosp. v. Sec'y of Health and Human Servs.*, 448 Fed. App'x 202, 206 (3d Cir. 2011)).  *Jeanes* is an unpublished Third Circuit opinion affirming summary judgment in favor of the Secretary of HHS in a case involving a hospital's

challenge to HHS' denial of a claim for medicare reimbursement based on depreciation losses realized as the result of a statutory merger. 448 Fed. App'x at 202-07. *Jeanes* involved a medicare regulatory scheme relating to reimbursement— it was not a contract case, let alone an oil and gas case—and is therefore categorically irrelevant. *Id.* at 203-04. In any event, *Jeanes* does not even support the "arm's-length" definition Plaintiffs advance. While the Third Circuit noted that under inapplicable regulatory guidance, "where a seller negotiates solely for the benefit of the surviving entity or in total disregard of the price, the transaction cannot be considered at arm's length[,] *id.* at 206,[2] it nevertheless recognized that consideration of "non-price factors" *is* permissible and does *not* preclude a finding of an "arm's-length" transaction, *id.* at 206-07. *Jeanes* is inapposite and contravenes the plain meaning of "arm's-length" as dictated by Pennsylvania contract law. On this basis alone, the Court can dispense with Plaintiffs' "price insensitivity" theory.

Separately, the evidence on which Plaintiffs rely under this "price insensitivity" theory does not prove their point. Plaintiffs do *not* argue that the fixed marketing fee that DTE earned per unit of gas sold (or other terms of the industry-standard NAESB entered into between Reliance and DTE) were not negotiated at "arm's-length." Dkt. 205 at 17-. Rather, Plaintiffs isolate a single price component

---

[2] *See also Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 378 (3d Cir. 2009) (not an arm's-length transaction where, unlike here, seller "was concerned with structuring the transaction in order to maximize Medicare reimbursement.").

of the sales contracts and claim that Reliance's sales to DTE were not "arms-length" because DTE was not sensitive to the ultimate price at which Reliance sold gas to DTE. *Id.* But that argument ignores the record evidence. DTE testified that if the prices at which it sold gas were low, the price DTE paid to Reliance for that gas would in turn be low, which would limit the volume of gas Reliance produced and sold to DTE, thereby limiting the ultimate remuneration paid to DTE. Dkt. 189-4 at 65:1-7. DTE therefore preferred that the price at which it sold gas to be high so the price paid to Reliance was also high, which incentivized Reliance to produce and sell more gas to DTE, thereby increasing the ultimate remuneration paid to DTE. *Id.* This evidence demonstrates that DTE was not price insensitive as Plaintiffs claim.

Plaintiffs' attack on the NAESB as part of their "price insensitivity" theory, although unclear, fails as well. Dkt. 205 at 18-19. The NAESB establishes that the sale of gas from Reliance to DTE was at arm's-length and the relationship between Reliance and DTE was that of a willing buyer and willing seller. Title to the gas transferred without any recourse provision, with DTE bearing the full risk of loss if it is unable to sell the volume it committed to buy. Dkt. 189-3 at 76:2-11; Dkt. 189-4 at 54:7-11; Dkt. 189- 5 §8.1. Contrary to Plaintiffs' claims, the NAESB does not serve to "alter[] the reality of the transactions" between Reliance and DTE—rather, it *establishes* that reality. Dkt. 205 at 19.

3.    **Plaintiffs' Claim That The Parties' Did Not Consider DTE To Be An "Arm's Length" "Unaffiliated" Buyer Is Legally Irrelevant And Factually Unsupported.**

Plaintiffs claim an issue of fact exists because Reliance did not "consider[]" DTE to be an arm's-length or unaffiliated buyer.  Dkt. 205 at 20-24.  This argument is legally and factually wrong.

Plaintiffs' argument is first premised is on a selective quoting of *American Consulting Corp. v. U.S.*, 454 F.2d 473 (3d Cir. 1971).  There, the plaintiff corporation sought to recover certain sums paid to and seized by the IRS as social security taxes for steel consultants working abroad in foreign steel mills but under contract with the plaintiff.  Resolution of the case turned upon a determination of the consultants' legal status under FICA.  The court simply noted that while, *in determining whether an employer-employee relationship existed for social security contribution purposes*, the belief and intentions of the parties as to their status are relevant considerations, they are nevertheless not determinative of the issues.  *Id.* at 480.  The instant dispute does not involve a determination of whether an employer-employee relationship existed for social security contribution purposes under FICA.

Plaintiffs also rely on *Brown v. 1401 New York Ave., Inc.*, 25 A.3d 912 (D.C. 2011), which involved an irrelevant landlord-tenant dispute arising under District of Columbia law.  This case involved whether attorneys had formed a partnership such that they could be held jointly and severally liable under a lease agreement.  The

court simply noted "[w]hile the 'manner in which the parties themselves characterize the relationship is probative' *of whether their relationship is a partnership*, 'the question ultimately is [an] objective' one: whether the parties intended to do the acts that in law constitute a partnership." *Id.* at 913-14 (quotations omitted) (emphasis added).   The instant dispute does not involve a determination of whether a partnership was created under District of Columbia law.

These cases do not support Plaintiffs' argument that how Reliance might have viewed its contractual relationship with DTE creates an issue of fact, because that contractual relationship is governed by the actual written words of the contract. Even if they stood for that proposition of law, the sole piece of evidence Plaintiffs recite does not support their argument.   Plaintiffs rely exclusively on an internal memorandum Reliance's Director of Marketing, Trading, and Risk Management Neelesh Kapoor issued "early in the process" stating that *Carrizo* has a "***3rd party (DTE see note)*** to manage the marketing process from well head to market because they have no marketing team." Dkt. 205 at 23 (citing Dkt. 193-7) (emphasis altered). "[E]arly in the process indeed"—Mr. Kapoor issued the internal memorandum at some point prior to October 2011, Dkt. 189-3 at 52:15-53:11, *before Reliance and DTE even entered into their relationship as reflected in the NAESB* on November 28, 2011, Dkt. 189-5; Dkt. 195 ¶16.   Therefore, this internal memorandum

categorically says nothing about *Reliance's* relationship with DTE, which did not even exist at the time Mr. Kapoor issued this internal memorandum.

More importantly, nothing in the internal memorandum remotely suggests that Reliance considered DTE to be something other than an arm's-length unaffiliated buyer.  In fact, Mr. Kapoor expressly referred to DTE as a "3rd party[.]"  Dkt. 193-7.  Mr. Kapoor's testimony confirms that Plaintiffs' seizing on the phrase "marketing process" in this internal memorandum is misplaced:

> Q.   In this sentence you state that DTE was providing marketing Carrizo.  Do you agree with me?
>
> A.   So -- I mean, I have written that.  The thing is DTE was a buyer of Carrizo's gas the way it was a buyer of our gas.
>
> Q.   Okay.  So DTE operated with Carrizo the same way that it operated with Reliance --
>
> [. . .]
>
> A.   So I may not know exact terms of how DTE operated, but for Reliance it was buyer and seller relationship with DTE.  And that's – when I say here marketing, basically I'm referring to buyer and seller relationship.
>
> Q.   So it's your testimony, as you sit here today, that DTE was the buyer of Reliance's gas?
>
> A.   Correct.

Dkt. 189-3 at 55:16-56:9.  As. Mr. Kapoor's testimony reflects, this internal memorandum confirms that Reliance considered DTE to be a buyer of its gas.

**4.    The Evidence On Which Plaintiffs Rely To Claim That Reliance "Controlled" DTE Does Not Create An Issue Of Fact.**

Plaintiffs claim that Reliance's sale of gas to DTE was not an arm's-length sale with an unaffiliated third-party because Reliance purportedly retained control of the asset after sale.  Dkt. 205 at 24-32.  Plaintiffs improperly rely on inapplicable authority, inadmissible expert opinion, and irrelevant evidence.

Plaintiffs claim that "[a]t the conclusion of an arm's length sale transaction between unaffiliated parties, the seller relinquishes control over the asset."  Dkt. 205 at 25.  In support of this proposition, Plaintiffs rely on *Northwest Hospital, Inc. v. Hospital Serv. Corp.*, 500 F. Supp. 1294 (N.D. Ill. 1980).   There, the plaintiff challenged a determination of the Commissioner of Social Security denying payment of certain items claimed as reimbursable costs under Medicare, including depreciation expenses for assets acquired for a corporate predecessor.  In defending the determination, the defendants relied on a 1972 interpretive letter concerning the phrase "bona fide" appearing in the Medicare statutory and regulatory scheme stating that "[t]o be considered a bona fide sale, a transaction must result from arm's length bargaining between distinct and unrelated buyer and seller entities and result in the actual control of the assets."  *Id.* at 1297.  The court expressly declined to address the applicability and validity of the interpretive letter, instead finding that the phrase "bona fide," "when viewed in the context of the statute and its regulations, *includes the concept of unrelatedness*."  *Id.* at 1298 (emphasis added).  The court

neither endorsed the 1972 interpretive letter on which Plaintiffs rely nor addressed the concept of control of assets appearing in it. *Id.* The instant dispute is not a medicare reimbursement case, and the 1972 interpretive letter—which the *Northwest Hospital* court did not even see fit to endorse—has no applicability here.

Next, Plaintiffs assert a definition of "arm's-length" that rests solely on the opinion of a purported expert. Dkt. 205 at 25 (citing Dkt. 205-5 ¶¶70-73). First, this argument fails because the language is unambiguous, and extrinsic evidence in the form of an expert's alleged definition is not admissible. Dkt. 205 at 39 n.30; *Weston and Co., Inc. v. Bala Golf Club*, 391 Fed. App'x 152, 155 (3d Cir. 2010). Second, extrinsic evidence is never admissible to change the plain meaning of a contractual term. Third, because Plaintiffs assert that "[i]ndustry custom is irrelevant to this dispute," *id.* at 18, there is no basis for considering this expert's opinion. Fourth, the purported expert has no oil and gas industry experience and could not proffer an opinion on industry custom evidence anyway. Plaintiffs cannot create an issue of fact based on the opinion of a purported expert defining the phrase "arm's-length" in the NEPA Leases in a way that conflicts with the term's plain meaning.

Finally, the evidence Plaintiffs proffer with respect to Reliance fails to demonstrate an issue of fact on "control" over gas after it was sold to DTE. Plaintiffs claim that under the Transaction Confirmations, including Reliance's assignment of midstream contracts to DTE as reflected in those documents, Reliance controlled

- 14 -

DTE.  The plain language of the Transaction Confirmations, however, completely undermines Plaintiffs claim that Reliance "controlled" DTE pursuant to these documents.  The Transaction Confirmations state "[DTE] shall use its sole discretion and judgment in determining the location, price and under what conditions it will resell Gas under this transaction on any Day, and such decisions shall be final and not subject to challenge by Seller."  Dkt. 189-6 at 4.  Consistent with this language, Both Reliance and DTE testified that DTE had complete discretion to determine where to market and sell the gas, to whom to market and sell the gas, and the price at which to sell the gas to third party buyers.  Dkt. 189-3 at 86:16-88:6; Dkt. 189-4 at 149:5-13.  Plaintiffs' citation to language first appearing in a Transaction Confirmation immediately before Reliance's relationship with DTE terminated (Dkt. 205 at 28 n. 18) does not change the undisputed evidence of the manner in which Reliance and DTE actually performed their contractual relationship for the entirety of their relationship.[3]

---

[3] Plaintiffs' reliance on testimony from Carrizo's Marketing Manager is not binding or relevant as to Reliance's separate contracts and relationship with DTE.  Dkt. 205 at 30-32; *Sehl v. Vista Linen Rental Serv., Inc.*, 763 A.2d 858, (Pa. Super. 2000).  First, Plaintiffs inaccurately truncate Mr. Dunn's testimony and omit a critical portion that undermines their assertion.  Second, Mr. Dunn had no role in drafting the NEPA Leases, and, therefore, his post-hoc testimony has no bearing on their meaning.  *CBS, Inc. v. Capital Cities Comm'cs*, 448 A.2d 48, 55 (Pa. Super. 1982).  Third, Mr. Dunn's testimony regarding the meaning of the NEPA Leases constitutes inadmissible legal opinion.  *Newman Development Grp. of Pottstown, LLC v. Genuardi's Family Market, Inc.*, 98 A.3d 645, 655-56 (Pa. Super. 2014).

**D.      Plaintiffs' Attempts To Distinguish The Directly Applicable Fail.**

Plaintiffs go to great lengths to distinguish, on irrelevant grounds, the case law

on which Reliance relies, because it disposes of their claims.  Dkt. 205 at 32-39.

First, Plaintiffs attempt to distinguish *Roco, Inc. v. EOG Resources, Inc.*, 2016

WL 6610896 (D. Kan. Nov. 9, 2016).  Plaintiffs claim that *Roco* did not involve an

express breach of contract claim but rather an implied duty of marketability claim.

Dkt. 205 at 34.  This is a distinction without a difference because one of the inquiries

under the implied duty of marketability under Kansas law is similar to that presented

by the NEPA Leases—whether the sale of gas was made in "good faith" (*i.e.*, an

arm's length transaction between two unaffiliated companies).  *Roco*, 2016 WL

6610896, at *17-*18.  Plaintiffs also claim that *Roco* did not hold that use of a

NAESB was *ipso facto* proof of an arm's-length sale between unaffiliated parties.

Dkt. 205 at 35.  Reliance does not claim that *Roco* so holds.  Rather, as Reliance has

shown, the facts surrounding the NAESB warranting summary judgment in the

producer's favor in *Roco* are the same as the facts here.  Dkt. 189 at 25-26.

Second, Plaintiffs claim that *Henceroth v. Chesapeake Exploration, L.L.C.*,

2019 WL 4750661 (N.D. Ohio Sept. 30, 2019), *aff'd*, 814 Fed. App'x 67 (6th Cir.

2020) is inapplicable because the lease at issue there required royalties to be

calculated based on net proceeds realized by the lessee.  Dkt. 205 at 36.  Plaintiffs

misunderstand the import of *Henceroth*, which found that calculating royalties based

on a netback price received at the wellhead *did not amount to deductions from the proceeds received*.  2019 WL 4750661, at *7.

Third, Plaintiffs claim that *Zehentbauer Family Land LP v. Chesapeake Exploration, LLC*, 450 F. Supp. 3d 790 (N.D. Ohio 2020) is inapplicable because the lease at issue there stated that, for purposes of calculating royalties, the value of gas is to be computed at the well.  Dkt. 205 at 37.  The NEPA Leases, however, do not place any limitation on where gas may be sold or where its value must be computed.  *Zehentbauer*'s holding that lease language stating "without any deductions or expenses" did not preclude use of the net-back valuation where gas was sold at the wellhead to an affiliated marketer squarely defeats the claims of Plaintiffs' "No Deductions" Class.  450 F. Supp. 3d at 809.

Finally, Plaintiffs attempt to distinguish *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 Fed. App'x 459 (6th Cir. 2019) on the grounds that the NEPA Leases "state how gas will be valued for purposes of royalty calculations[.]"  Dkt. 205 at 38.  This is simply not true, and Plaintiffs cite no language in the NEPA Leases supporting this statement.  Nothing in the NEPA Leases—including the "no deductions" language—imposes any obligation on Reliance to either sell gas downstream or pay royalties based on a downstream sales price when gas is sold at the wellhead.  That is exactly what *EQT* held.  The fact that "Pennsylvania has not

adopted any 'at-the-well' presumption" as Plaintiffs claim (Dkt. 205 at 38) has no bearing on the applicability of the relevant holding from *EQT* to the instant dispute.[4]

**E.   Plaintiffs' Individual Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law.**

Plaintiffs' three arguments to avoid dismissal of their individual claim for breach of the implied covenant of good faith and fair dealing are without merit.

First, Plaintiffs take the admittedly unsupportable position that the implied covenant of good faith and fair dealing cannot be waived. Dkt. 205 at 41.  Plaintiffs cite no Pennsylvania authority for this proposition except a provision of the Pennsylvania Commercial Code, 13 Pa. C.S. §1302(a), which Plaintiffs do not contend applies to this dispute.  *Id.*  Indeed, Plaintiffs ignore *this Court's* refusal to certify Plaintiffs' "Implied Duty" Class because the Slamon Lease and the Lewis Lease expressly disclaim implied covenants.  Dkt. 157 at 27-28.  Plaintiffs further ignore Pennsylvania law (on which this Court relied) enforcing disclaimers of implied covenants like those in the Slamon Lease and the Lewis Lease.  *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986); *Caldwell v. Kriebel Res. Co.*, 72 A.3d 611, 614 (Pa. Super. 2013).

---

[4] Plaintiffs also go to great lengths to distinguish *Coastal Forest Resources Company v. Chevron U.S.A., Inc.*, 2021 WL 1894596 (W.D. Pa. May 11, 2021).  Dkt. 205 at 38-39.  Reliance cited *Coastal Forest* for the basic proposition that Pennsylvania federal courts have applied *Kilmer* in breach of contract cases.  And, in any event, the lease in *Coastal Forest* required royalties to be paid on the "gross sale."  *Id.*

Second, Plaintiffs acknowledge that the Middle District of Pennsylvania has refused to recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing in circumstances like this case. Dkt. 205 at 41-42 (citing *Hordis v. Cabot Oil & Gas Corp.*, 2020 WL 2128968, at *4-*5 and n.3 (M.D. Pa. May 5, 2020)). Plaintiffs therefore pivot to asserting that "regardless of whether Plaintiffs' implied duty claims are considered an independent cause of action or, instead, are treated as a claim for breach of Plaintiffs' Leases for failing to obtain a competitive market price, the claim should survive." *Id.* at 42 (citing *Chambers*, 359 F. Supp. 3d at 278). As a threshold matter, Plaintiffs' individual implied duty claim *is* asserted as an independent cause of action, and, therefore, should be dismissed. Further, even if Plaintiffs' individual implied duty claim is treated as a claim for failure to obtain a competitive market price, it still fails as Plaintiffs' reliance on *Chambers* is misplaced. There, the court permitted a failure to obtain a competitive market price claim to proceed to discovery based on "the express terms of the leases" and did not have to "address [the plaintiffs'] implied covenant of good faith and fair dealing theory." *See* 359 F. Supp. 3d at 281.

Third, contrary to Plaintiffs' circular claim, there *absolutely* is express language in the Slamon Lease and the Lewis Lease that Plaintiffs' implied duty theory would impermissibly trump. Dkt. 205 at 42-43. Plaintiffs' implied duty theory would circumvent at least two provisions in the Slamon Lease and the Lewis

Lease: (1) the disclaimer of implied duties; and (2) the royalty provision stating that Reliance must base royalties on the proceeds it receives.  There is no express duty to market, and the Slamon Lease and the Lewis Lease expressly disclaim implied duties.  Plaintiffs impermissibly attempt to use a *disclaimed* implied duty to supply "further obligations beyond those expressly articulated in the contract."  *Hordis*, 2020 WL 2128968, at *5.  Plaintiffs' implied duty claim fails.

## F.   Because Plaintiffs' Breach Of Contract Claims Fail, Their Accounting Claim Fails As Well.

A legal accounting is not a claim, but a demand for relief, and is merely incident to a proper breach of contract claim.  *Canfield v. Statoil USA Onshore Properties, Inc.*, No. CV 3:16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017).  Because Plaintiffs fail to state an actionable breach of contract claim, an attendant demand for a legal accounting claim, especially one asserted as a separate cause of action, necessarily fails.  *Pflasterer v. Range Resources-Appalachia, LLC*, 2019 WL 4242057, at *6 (W.D. Pa. Sept. 6, 2019).

## III.   CONCLUSION

Reliance is entitled to summary judgment.  The Court should dismiss the Second Amended Complaint in its entirety with prejudice.

Dated: January 14, 2022                    **REED SMITH LLP**


                                           */s/ Justin H. Werner*
                                           Justin H. Werner
                                           Alex G. Mahfood
                                           225 Fifth Avenue
                                           Pittsburgh, PA 15222
                                           (412) 288-3131
                                           (412) 288-3063 (facsimile)
                                           jwerner@reedsmith.com
                                           amahfood@reedsmith.com

                                           *Counsel for Defendants*
                                           *Reliance Marcellus II, LLC and*
                                           *Reliance Holding USA, Inc.*

## <u>CERTIFICATE OF BRIEF LENGTH</u>

I certify that the foregoing Defendants Reliance Marcellus II, LLC and Reliance Holdings USA, Inc.'s Reply in Support of Motion for Summary Judgment complies with Local Rule 7.8.  I certify that this Brief contains 4,956 words.


*/s/ Justin H. Werner*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

*/s/ Justin H. Werner*